# CHARLESTON.

D. Minotti _v._ A. R. Brune and Dunbar Land Company.

Submitted May 8, 1923.　Decided June 5, 1923.

1. Appeal and Error—_Verdict not Supported by Sufficient Evidence set Aside._

　　The verdict of a jury will be set aside where the evidence is insufficient to support it. (p. 187).

2. Garnishment—_Contingent not Subject to Attachment._

　　A contingent liability is _not_ subject to an order of attachment. (p. 187).

Error to Circuit Court, Kanawha County.

Action by D. Minotti against A. R. Brune and the Dunbar Land Company as garnishee. Judgment for plaintiff, and defendant the garnishee brings error.

*Reversed.*

*McKee & Luckey* and *Price, Smith, Spilman & Clay,* for plaintiff in error.

*D. W. Taylor* and *B. J. Pettigrew,* for defendant in error.

LITZ, JUDGE:

The Dunbar Land Company, a corporation, prosecutes this writ of error to the judgment of the circuit court of Kanawha county, rendered April 20th, 1922, against it as garnishee, on the verdict of a jury in favor of the plaintiff, D. Minotti, for the sum of $4016.66.

The defendant, A. R. Brune, was engaged by the Dunbar Land Company as real estate agent to sell town lots. This company first gave to Brune individually, and later to him and Umbi Di Marzo jointly, a letter of agency as follows:

"DUNBAR, WEST VIRGINIA,
June 11, 1921.

"MR. A. R. BRUNE,
54 West Thirteenth Street,
New York, N. Y.

"DEAR SIR:

"We hereby grant you an agency to sell the lots of this Company at not less than our regular schedule price as made by us from time to time, and agree to pay you a commission of twenty-five (25) per cent of said schedule price. We also agree that you shall have the privilege of adding to such schedule price not more than ten (10) percent. thereof, which addition is to be added to your commission.

"Lots are to be sold for not less than ten (10) percent. cash and Fifteen ($15.00) Dollars per month under contract by which Purchaser agrees to pay all taxes and city assessments. All payments are to be made direct to this office and all commissions paid by check of the Dunbar Land Company as follows: one-half (½) of the cash payment, and one-half (½) of each monthly payment as it is received,—settlements

for monthly payments to be made on the tenth of the month, for all payments received up to the last day of the month preceding.

"We further agree to advance to you not less than Two Hunderd Fifty ($250.00) Dollars per week for a period of eight (8) weeks to be held by us out of any commissions due you at the expiration of this contract.

"This contract is to expire in one (1) year from this date and is subject to cancellation at any time after ninety (90) days, provided you shall not have sold an average of twenty (20) lots per month for the period from date hereof until such cancellation. If you should sell an average of twenty (20) or more lots per month upon the terms set out above, this contract shall ,not be subject to cancellation until the expiration of twelve (12) months from date hereof.

"You are to have the right to employ sub-agents at your own discretion; but these sub-agents are to look to you and not to us, for payment of their commissions.

"Yours very truly,
"DUNBAR LAND COMPANY,
By (Sgd.)    W. T. MOORE,

.................
"W. T. MOORE, Treasurer."

WTM :NB
"ACCEPTED :
(Sgd.)    A. R. BRUNE.
(Sgd.)    UMBI DI MARZO."

It appears that the individual letter was given June 11th, 1921, and a short while afterward this was superseded by the joint letter bearing the same date. Di Marzo, very soon thereafter, transferred or released his interest in the agency to Brune, who, with the services of sub-agents, acting under this agency, sold numerous town lots between June 11th, and November 4th, 1921, when the agency was revoked. In November, 1921, Brune absconded owing numerous debts, including an obligation to plaintiff of $4,016.66; and immediately thereafter, November 23d, 1921, the plaintiff instituted this action in assumpsit against Brune to recover the amount. On the date of the institution of the suit an order of attachment was issued in the case, and two days later,

November 25th, 1921, was served upon the Dunbar Land
Company as being indebted to, or having in its possession
the effects of, defendant A. R. Brune. On the 10th day of
January, 1922, this company filed its answer denying that
it owed, or had in its possession any effects of, A. R. Brune at
the time of the service of the attachment or thereafter. Upon
suggestion by the plaintiff that the garnishee had not fully
disclosed the matters stated in its answer, a trial was had
upon that issue, resulting in a verdict against the garnishee
in favor of plaintiff for the sum of $4016.66, the amount
found to be due from Brune to Minotti. Upon this verdict
the court entered judgment.

The appellant, Dunbar Land Company, relies for reversal
of the judgment and the setting aside of the verdict mainly
upon the insufficiency of the evidence to sustain the verdict,
and therefore insists that its peremptory instruction tendered
should have been given. The evidence in behalf of the
plaintiff consists of the testimony of plaintiff and his son,
C. R. Minotti, to the effect that on the day following service
of the attachment on Dunbar Land Company they went to
its office for the purpose of ascertaining what amount, if any,
was due or owing by this company to Brune; and that they
were then and there advised by Paul W. Grosscup, presi-
dent, and A. D. McCormick, treasurer, of the company, with
reference to the status of accounts between the company and
Brune.

It is contended on behalf of the plaintiff that the testi-
mony of the two Minotti's establishes an admission on the
part of Grosscup, president, and McCormick, treasurer, of
the company that it owed Brune a *fixed* indebtedness of
over $6000.00. Counsel for appellant, however, insist that
this evidence tends merely to prove an admission on the
part of these officials of a *contingent* indebtedness from the
Dunbar Land Company to Brune, which was not subject to
the order of attachment.

From the evidence in chief of C. R. Minotti: ·
"Q. What did they (Grosscup and McCormick)
say that the money was owed for, if they said?
"A. Commission *to come* on sale of lots.
"Q. Lots that had already been sold by Brune?

"A.   Yes, sir.

"Q.   You say they showed you their books?

"A.   Not a book, no, sir, it was a sheet; sheet of paper.

"Q.   Describe that sheet of paper.

"A.   Sheet of paper about this long rather (illustrating), many *stipes* on the paper; if I am not mistaken, it was written in carbon.   It was a carbon copy, if I am not mistaken, and with all lot sales, commission paid and *commission to come;* and I saw where the balance says nine thousand one hundred ninety seven and I think ten cents, or something like that.   I cannot remember rightly but *I have the paper that Brune sent with another man* with the same amount.   And he has stated on this paper— these two numbers correspond, the same as the Dunbar Land Company and what Brune says the Dunbar Land Company owed him after he left."

The plaintiff, D. Minotti, states in his chief examination: "Right after, the next day after the attachment was served, me and my boy went down and I met Mr. Grosscup at the office.   This gentleman here, (McCormick), I saw him.   So I told him about Brune, he was gone and he left a lease at his office, and *my boy got ahold of that, and that lease shows the Dunbar Land Company owing between nine and ten thousand dollars.*   So when I put up that in the office of Mr. Grosscup, he say, 'We do not owe that.'   They showed that book.   They say, 'There is a little over $6,000.00; that is what we owe Brune,' and when they were—'*when the commission come in* we going to treat you right, but we cannot do the thing now until the *commission come in,* and I am going to do whatever I can for you.'"

He also states on cross-examination:   "Mr. Grosscup and Mr. McCormick says, 'We owe over $6,000.00 but we ain't got it.   *Whenever the commission come,* we will take care of you.'"

These alleged admissions by the officers of Dunbar Land Company do not show any *fixed* indebtedness from this company to A. R. Brune.   The indebtedness was contingent upon "commission to come" which had not been received or collected from the lot purchasers.   The son, C. R. Minotti, says that the statement shown him at the time by the representa-

tive of the land company, a copy of which he had obtained through Brune, showed "all lot sales, commission paid and *commission to come,*" and that the balance was nine thousand one hundred and ninety-seven dollars.

It was also *"commission to come in,"* according to the evidence of plaintiff, that Grosscup, president of the company, promised would be applied to plaintiff's claim.

A. D. McCormick, treasurer of the Dunbar Land Company, in his testimony states that Brune was indebted to the company at the time of service of the attachment and at all times thereafter. He explained, however, that if the purchasers of lots sold by Brune made sufficient payments for him to receive his full commissions, the company would owe Brune for commissions nearly $7,000.00. This statement is perfectly consistent with the alleged admissions made by him and Grosscup.

In August, 1921, the company gave Brune two notes for $1000.00 each, one payable in thirty days and the other in sixty days, which had gotten into the possession of plaintiff, but were never paid. It also paid to persons working for Brune as sub-agents in the sale of lots, after the service of the attachment, over $1900.00. The giving of the notes and making of such payments, unexplained, would ordinarily indicate an indebtedness from the company to Brune. It is claimed, however, by the land company that the notes were given to Brune as "advancements" on commissions to become due him, and that the accounts of the sub-agents against Brune, amounting to $1986.50, were simply purchased by the company. There is no other explanation. Evidently it was expected that sufficient commissions to cover these accounts may later accrue to Brune from payments by lot purchasers.

After A. D. McCormick had testified that he and Grosscup did not tell plaintiff the company was indebted to Brune, but merely that there would be due Brune possibly $6000.00 on commissions in the event the purchasers to whom he had sold lots made sufficient payments to take care of his commissions in full, C. R. Minotti was recalled and stated that nothing was said about money coming due to Brune in the

future.   The latter witness does not specifically deny, how-
ever, his previous testimony to the effect that the indebted-
ness admitted by the officers of appellant was dependant or
contingent upon "commission to come."

Counsel for plaintiff calls attention to the failure of the
garnishee to introduce its books, or a statement showing the
status of accounts between itself and Brune, and upon this
argues that the books would not have sustained its claim
that it owed no indebtedness to Brune, otherwise the books
would have been introduced.   It seems, perhaps, somewhat
a lack of judgment to have withheld this information from
the jury; on the other hand, the plaintiff, whose duty it was
to make out his case, stands in no better light.   As appears
from the testimony of the plaintiff and his son, he was in
possession of an itemized statement from defendant's books,
showing the true condition of accounts between the com-
pany and Brune.   Why was it not introduced?   If this
statement sustained the contention of plaintiffs it certainly
would have outweighed the mere verbal statements of plaintiff
and his son as to the alleged admissions on the part of the
officers of the company, which are clearly insufficient to
establish a present *fixed* indebtedness from the garnishee to
Brune.

The evidence in behalf of appellant, which consisted
merely of the testimony of its treasurer, A. D. McCormick,
is unsatisfactory in respects other than those already pointed
out.   We are therefore basing our decision to reverse the
circuit court wholly upon the insufficiency of plaintiff's
evidence as tending to show an admitted present indebted-
ness from appellant to the defendant Brune.   Plaintiff, of
course, can occupy no higher ground than his absconding
debtor.   *Howell* v. *McCarty*, 77 W. Va. 695; *Lipscomb* v.
*Condon*, 56 W. Va. 416.

"A contingent debt, though arising out of contract, can
not be garnisheed, as it would be unjust to the garnishee to
render a judgment against him on a contract when the amount
apparently due, according to the terms of the contract, may
be extinguished by subsequent events. * * * * A contingent
liability of a contract affords no ground for garnishment."

*Webster Wagon Co.* v. *Insurance Co., et al.,* 27 W. Va. 314; *Strauss* v. *R. R. Co.,* 7 W. Va. 368.

In order to attach a debt due in the future it must be a certain debt which will become payable upon the lapse of time and not a contingent liability, which may become a debt or not on the performance of some other acts or the happening of some uncertain event. Drake on Attachments and Garnishment, sec. 559.

It was shown by appellant that a great many of the persons to whom defendant Brune had sold lots as its agent had become delinquent in their payments, by reason of which appellant had the right to forfeit the contracts with such lot purchasers; whereupon the plaintiff was permitted to ask the question, over objection of appellant: "Upon cancellation of those contracts, did the Dunbar Land Company keep the cash which had been paid in by the purchasers?" To which the witness, McCormick, replied: "The cash came direct to us, of course. The customer would think that we retained all the cash, where the salesman got half of the cash when the sale was made."

We think that this was proper evidence on cross-examination; and particularly so as it is not shown that Brune was bound by the right of appellant to forfeit contracts of delinquent purchasers and thereby prevent the accrual to him of further commissions.

Appellant also assigns as error the refusal of its instructions Nos. 3, 5 and 6. Instructions Nos. 3 and 5 would have told the jury to disregard the giving of the two notes of $1000.00 each to Brune, as evidence in the case. This was proper evidence to go to the jury on the question at issue as to whether the appellant was indebted to Brune at the time of the service of the order of attachment, or at any time thereafter before answer by the garnishee.

Instruction No. 6 is to the effect that in determining whether or not there was money in the hands of garnishee due to A. R. Brune between the service of the attachment and the answer by the garnishee, the jury should limit its findings to the cash account and disregard the accrued commission account. The court gave to the jury defendant's

instruction No. 7, which presented clearly the issue as to whether or not the garnishee was indebted to Brune between the time of the service of the attachment and the answer of the garnishee. In view of this, we think instruction No. 6 was properly refused, as it would have likely tended to confuse the jury in accepting the evidence of appellant's witness McCormick relative to the cash account as binding upon plaintiff, rather than as mere evidence on the real issue.

For the reasons stated, the judgment of the circuit court is reversed, verdict set aside, and new trial awarded.

*Reversed.*