# CHARLESTON.

C. L. SNOWDEN *v.* J. V. THOMPSON *et al.*

(C. C. 332.)

Submitted January 20, 1925.   Decided January 27, 1925.

ATTACHMENT—*After Issuance of Attachment Describing Note Made by Non-resident, One Subrogated to Rights of Plaintiff May Not Amend Bill to Include Notes Not Owned by Original Plaintiff and Not Described in Affidavit.*

Upon an affidavit definitely describing a certain note made by a non-resident of West Virginia, an attachment was issued. One subrogated to the rights of the plaintiff in the suit may

not amend the bill to include notes not owned by the original plaintiff and not described in the affidavit.

(Attachment, 6 C. J. § 1135 [1926 Anno].)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Case Certified from Circuit Court, Marshall County.

Suit by C. L. Snowden, substituted as plaintiff instead of J. I. Feather, against J. V. Thompson and others. After overruling demurrer to plaintiff's amended bill, trial court certified cause.

*Reversed.*

*James T. Miller* and *Sturgis & Sturgis,* for plaintiff.

*J. C. Simpson, H. L. Robinson* and *McCamic & Clarke,* for defendants.

HATCHER, JUDGE:

On May 3, 1915, James T. Miller, attorney acting for his client, one J. I. Feather, executed an affidavit for attachment in which it is stated that Feather is about to institute a suit in equity in the circuit court of Marshall County against W. M. Thompson, John E. Hess, J. M. Hustead and J. V. Thompson, who were non-residents of the State of West Virginia, for money due on a note for $20,000, made on August 11, 1914, to J. I. Feather by J. V. Thompson as principal with the other named parties as sureties. A bill was filed at June Rules, 1915, of said court by Feather against the maker and sureties on said note, which, in addition to the facts referred to in the affidavit, alleged ownership by W. M. Thompson of certain interests in numerous tracts of land in Marshall County, with reference to certain deeds, the levy thereon by the sheriff under an order of attachment and prayed that the real estate of W. M. Thompson be sold to satisfy the plaintiff's claim. The bill was dismissed as to Hess and Hustead at the said Rules.

An order appears with the papers certified, showing that in January of 1920 C. L. Snowden on his petition was substituted as plaintiff in this cause instead of J. I. Feather.

C. L. Snowden as plaintiff filed in open court on October

25, 1923, an amended and supplemental bill, in which are named as defendants, W. M. Thompson, J. V. Thompson, A. M. Hustead, J. E. Hustead, W. B. Hustead, John E. Hess, and Daniel Sturgeon, Albert Gaddis and William C. McKean. The last three are trustees in bankruptcy of the estate of W. M. Thompson, Bankrupt; and A. M., J. E. and W. B. Hustead are termed ''representatives or alienees of J. M. Hustead dec'd.''

The amended bill alleges the filing of the original bill by Feather (which is made a part of the amended bill) the substitution of plaintiff for Feather and that on January 11, 1922, the same was heard, and a decree entered adjudging that there was due and owing to the plaintiff by W. M. and J. V. Thompson on account of the debt and claim in the original bill the sum of $27,579.27 with interest from that date. It then states that a sale of the attached real estate of W. M. Thompson was also then entered, but upon petition of W. M. Thompson a rehearing was granted on the——day of——————, 192—, and on February 2, 1923, the said Thompson filed in open court his answer to the original bill, and that by order on a petition filed on the——day of——————————, 1923, Daniel Sturgeon, Albert Gaddis and Wm. C. McKean, trustees in bankruptcy of the estate of W. M. Thompson, Bankrupt, were made parties defendant in the cause with leave to defend the same.

The amended bill further alleges that upon the request of and acting for John E. Hess, who had become embarrassed by reason of being surety on the notes of J. V. Thompson (at that time insolvent) the plaintiff purchased in the months of May and June, 1917 (with money raised in part by plaintiff's own notes and partly from sale of personal property of Hess), for the use of Hess an assignment to plaintiff of the following notes and judgments:

1.   The note to J. I. Feather by J. V. Thompson *et al.* as aforesaid for which he paid $22,875.00. Judgment had been taken by Feather in the Pennsylvania courts against J. V. and W. M. Thompson in one suit, and against Hustead and Hess in another suit on this note.

2.   A note dated April 3, 1913, for $20,000 made payable to Dr. Wm. A. Longanecker by J. V. Thompson as principal

with W. M. Thompson, J. M. Hustead and John E. Hess as sureties, upon which judgment had been recovered in a Pennsylvania court by the payee against the principal and sureties for $24,269.67.

3.   A note dated December 14, 1914, for $20,000 payable to Fuller Hogsett at the First National Bank of Florence, Alabama, payment whereof according to the bill was guaranteed to that bank "the owner and holder thereof" jointly by said Fuller Hogsett, W. M. Thompson and John E. Hess. Both Hogsett and Thompson becoming insolvent, the plaintiff paid for same, "in order to protect Hess," (as alleged) the sum of $18,915.15 on June 8, 1917.   (This note had been reduced $5,000 by the proceeds from the sale of some collateral pledged therewith.)

The plaintiff recites the payment to him in 1919 and 1920 by the sheriff of Greene County, Pennsylvania, of "one-half of the amounts then due on the Feather and Longanecker judgments" out of the proceeds of the sale of lands of J. M. Hustead, then deceased, by reason of his, plaintiff's, ownership of those liens, etc.   He also admits payment to Hess (with consent of plaintiff) on August 28, 1923, by the trustees in bankruptcy of W. M. Thompson, bankrupt, of $4,900 to be applied on the contributive share of W. M. Thompson "in the judgment herein" (presumably the Feather judgment) and of a like amount for a like purpose by the same trustees at the same date to "the representatives or alienees" of J. M. Hustead, deceased, "and that thereupon," in the language of the bill, "parts of the real estate herein levied upon and attached were released from the lien thereof." The parts referred to are not described in the amended bill.

Several payments of a few hundred dollars each are acknowledged by plaintiff as dividends paid by the J. V. and W. M. Thompson bankrupt estates, respectively.

After allowing such credits as the plaintiff deems proper, he alleges there is yet due him for the use and benefit of John E. Hess as of September 1, 1923, $4,957.97 on account of said Feather and Longanecker notes and $13,038.53 on account of the First National Bank of Florence, Alabama, note, amounting in all to $17,996.50 as of that date.

The bill prayed for the relief sought in the original bill, that the decree of January 11, 1922, may stand as entered by the court, as to the said sum of $17,996.50, with interest from September 1, 1923, and as to any amount due A. M., J. E. and W. B. Hustead, "resulting from the distribution of the proceeds of the sheriff sales in Greene Co., Pa., aforesaid," that the said decree as so corrected, may be enforced, and for general relief.

The defendant trustees in bankruptcy demurred to the amended bill, and the circuit court upon overruling the demurrer certified the cause here for decision upon the points as presented on the demurrer, which are as follows:

1. The amended and supplemental bill makes a different cause of action from that of the original bill.

2. A court of equity has no jurisdiction of the claims by notes, other than the J. I. Feather note mentioned and described in the amended and supplemental bill.

3. There is a variance between the cause of action stated in the affidavit for attachment and the amended and supplemental bill.

4. There are two additional causes of action having no relation to the cause of action described in the original bill, or to each other, set up in the amended bill.

5. The Circuit Court of Marshall County has no jurisdiction to enforce payment of the Longanecker and Hogsett notes from the estate of W. M. Thompson, Bankrupt.

The original proceedings in this cause are strictly statutory, being based on section 1, chapter 106, Barnes' Code, 1923. Being statutory, close conformation to the statute is required. The first requirement of the statute is that the plaintiff shall file with the clerk an affidavit "stating the nature of the plaintiff's claim." Having under oath made a statement of his case, and that for the exceedingly important purpose of obtaining an attachment, our practice will not tolerate a material departure from that statement in the bill or declaration.

"Inconsistency between the claim stated in an affidavit for an attachment and the demand set up in the declaration constitutes a variance fatal to the
98 W. Va.

attachment." *Simmons* v. *Simmons,* 56 W. Va. 65, 48 S. E. 833.

In its opinion in the case the court said:

> "But as the affidavit purports to state the nature of the demand and states one entirely different from the claim described in the declaration, the result is what the courts term a variance. The two papers are inconsistent. The contract upon which recovery is sought would be admissible as evidence under the declaration, but does not accord with the statement found in the affidavit. In *Summers* v. *Allen,* 44 W. Va. 120, Judge BRANNON said: 'The cause of action stated in the two papers ought to be the same.' This view is fully sustained by the authorities. 'A plaintiff may not attach for one cause of action, and having sustained his writ, declare for another.' *Hambrick* v. *Wilkins,* 65 Miss. 18; *Ligon* v. *Bishop,* 43 Miss. 527; *Focke* v. *Hardeman,* 67 Tex. 173; *Deering & Co.* v. *Collins,* 38 Mo. App. 80. A leading case on this subject is *Wright* v. *Snedecor,* 46 Ala. 92."

While the rule may not be so rigidly applied as to form in a court of equity as at law, it will not be relaxed in equity as to substance. A plaintiff, therefore, may not be permitted to do by amendment what he could not do in his original bill, viz., introduce in an amended bill claims not mentioned in his affidavit and in no way connected or related to the claim set up therein.

The plaintiff's several demands against W. M. Thompson for contribution because of plaintiff's payments of the Longanecker and Hogsett notes, not appearing in the affidavit upon which his case is founded, may not now be set up by way of amendment or supplement to the original bill.

The procedure in attachment causes being so closely circumscribed by statute and decision, we deem it unnecessary to extend this opinion to any length by a discussion of the general laws applicable to subrogation and contribution.

Briefly stated, however, the right of the plaintiff *to step into Feather's shoes* (as some of the authorities aptly describe

the right under subrogation)! in this attachment suit is clearly established. *German American Savings Bank v. Fritz,* 68 Wis. 390, 32 N. W. 123; *Furnold* v. *Bank,* 44 Mo. 336; *Smith* v. *Rumsey,* 38 Mich. 183; *Lidderdale* v. *Robinson,* 2 Brock. (U. S. C. C.) 159.

In the latter case Judge Marshall wrote the opinion of the court, and in commenting on the rights of a surety who had paid money for which others were equally responsible, held that:

> "He shall be substituted to every equitable intent and purpose in the place of the creditor whose claim he has discharged. . . . The cases suppose the surety to stand in the place of the creditor, as completely as if the instrument had been transferred to him, or to a trustee for his use. Under this supposition he would be at full liberty to proceed against every person bound by the instrument. Equity would undoubtedly restrain him from obtaining more from an individual than the just proportion of that individual; but to that extent his claim upon his co-surety is precisely as valid as upon his principal."

But, while Snowden is permitted to step into Feather's shoes, he must go softly and follow the same path that Feather would have trod. For it is established law in West Virginia that:

> "Subrogation entitles a person to no greater rights than the party had to whose rights he claims subrogation." *Butts* v. *Sun Lumber Co.,* 82 W. Va. 113, 95 S. E. 585. Accord: *Smith* v. *Davis,* 71 W. Va. 316, 76 S. E. 670; *Swarts* v. *Siegel,* et al., 117 Fed. 13; 20 Am. & Eng. Ency. Law (2d ed.) 206-207; 37 Cyc. 380; 99 Am. St. Rep. 486, note; *Leavit* v. *Railway Co.,* 90 Me. 153.

In the opinion of the court in the case last cited it is stated:

> "It necessarily follows from the very principles of this doctrine of subrogation that one cannot thereby succeed to or acquire any claim or right which the party for whom he is substituted did not have."

Feather never had claim to or interest in the Longanecker

and Hogsett notes. The plaintiff in the exercise of such rights as Feather had (and such rights only) can not in this proceeding be permitted to pursue his claims arising from payment of the Longanecker and Hogsett notes, but he is limited herein to the furtherance of such claim against W. M. Thompson as the law gives him by reason of his ownership of the Feather note.

From allegations in the bill it appears that W. M. Thompson is a bankrupt, and that his estate is in charge of trustees in bankruptcy, thus compelling the inference that a Federal Bankruptcy Court has adjudged him a bankrupt and has taken his estate in charge. If this be so, is not the jurisdiction of the Bankrupt Court to consider any claims now advanced against Thompson by reason of plaintiff's present ownership of the Longanecker and Hogsett notes, exclusive?

For the foregoing reasons, the ruling of the circuit court on the demurrer to the amended bill is reversed, and the demurrer is sustained.

*Reversed.*