M. W. Kellogg Company, *a corporation*

*v.*

Concrete Accessories Corporation *and*
Fombell Fabricating & Welding Inc., *corporations*

(No. 13329)

Submitted January 22, 1974.        Decided April 9, 1974.

*Steptoe & Johnson, Herbert G. Underwood* for appellant.

*McWhorter, McNeer & Highland, C. David McMunn* for appellees.

HADEN, JUSTICE:

This is an appeal pursuant to West Virginia Code, Chapter 58, Article 5, Section 1(h) by M. W. Kellogg Company, a corporation, from an order of the Circuit Court of Harrison County, quashing an attachment and garnishment sued out concurrent with the institution of a civil action. At issue is the correctness of the lower court's ruling quashing the attachment and garnishment.

Prior to the institution of the civil action, Kellogg had entered into a contract with the Allegheny Power System assuming the duty of constructing certain smoke stacks and chimneys at the Harrison Power Station located in Harrison County, West Virginia. Kellogg then subcontracted with Fombell Fabricating & Welding, Inc., a Pennsylvania corporation, which was to fabricate and

furnish two "slip form towers," integral parts of two of the smoke stacks to be contracted at the power station. Fombell, in turn, contracted with Concrete Accessories Corporation, also a Pennsylvania corporation, for the fabrication and delivery of all or a substantial portion of the towers.

Upon receipt of the fabricated towers from Fombell, Kellogg paid Fombell the contract price of $55,819.50 and did not withhold a retainage.

Apparently, Concrete was not paid its contractual consideration by Fombell. Consequently, it served and recorded a notice of mechanic's lien in the amount of $24,508.69 against the real estate described as the Harrison Power Station.

Subsequently, Monongahela Power Company, one of the member-owners of the Allegheny Power System and the Harrison Power Station facility, in accordance with prerogatives contained in the contract between the Allegheny Power System and Kellogg, made formal demand upon Kellogg to satisfy the mechanic's lien and to obtain a release of the recorded lien. Kellogg refused to satisfy the lien on the basis that it had made full payment to Fombell for the fabrication and delivery of the slip form towers.

As a consequence of Kellogg's refusal to satisfy the mechanic's lien, Monongalia Power voluntarily agreed to pay Concrete's attorney the sum of $24,692.50 to secure a release of the lien.

With knowledge that Monongalia Power was intending to satisfy the mechanic's lien, and upon the assumption that the Allegheny Power System or its member-owners would then deduct the amount paid to satisfy the lien from retainages owed by the Allegheny Power System to Kellogg, Kellogg instituted its civil action against Fombell and Concrete. Ancillary to that action, Kellogg issued an attachment with a garnishment endorsed thereon and had the same served upon Concrete's attorney

contemporaneously with the acquisition by the attorney of the funds tendered by Monongahela Power to Concrete in satisfaction of the mechanic's lien.

Then Concrete moved to quash the attachment and garnishment and moved to dismiss the complaint on the ground that both pleadings failed to state a cause of action upon which relief could be granted. At a hearing on the motion, upon argument of counsel, the filing of written memorandum and upon the affidavits of the parties in support and in opposition to the motion, the trial court denied the motion to dismiss Kellogg's complaint but sustained the motion to quash the attachment and garnishment. This is the order appealed from.

On this appeal Kellogg contends the order of the court to have been in error and to its prejudice because the "form" of Concrete's challenge was allegedly directed to defects in the complaint and failed to challenge the existence of the grounds of attachment or the sufficiency of the affidavit of attachment as required by the provisions of West Virginia Code, Chapter 38, Article 7, Sections 32 and 33. In pertinent part, these sections provide as follows:

> **"38-7-32.  Quashing of attachment for insufficiency of affidavit.**
>
> "The right to sue out an attachment may be contested, and when the court is of opinion that the facts stated in the affidavit or amended affidavit were not sufficient to authorize the issuing thereof, or that the affidavit is otherwise insufficient, judgment shall be entered that the attachment be quashed."
>
> **"38-7-33.  Denial of grounds of attachment; trial; new trial; appeal.**
>
> "Any person entitled to defend in any attachment proceeding may controvert the existence of the grounds of the attachment and of the facts relied upon to show the existence of such grounds, as such grounds and facts are stated in the affidavit, or in any amendment thereto, and may file an answer in writing denying the

> existence of such grounds and facts in any proceeding at law or in equity, such answer to be verified as any other pleading."

Necessarily, both the language contained in the affidavit of attachment and the complaint in the civil action are in issue and material to the resolution of this appeal. The *affidavit* names Concrete and Fombell and says that Kellogg is about to institute a civil action against both for monies due Kellogg "from defendants or one of them" for a claim arising out of contract under which "the defendants or one of them have been overpaid and unjustly enriched to the extent of $24,692.50," concluding with an assertion that Concrete "is a foreign corporation." There is also an affirmative allegation that the sum in question is *presently* due from either one or the other of Fombell and Concrete.

Comparatively, the *complaint* provides that it is being instituted on the assumption that "Allegheny Power Systems [*sic*] *will* deduct from retainages subject to its control,": monies that would be otherwise due and payable to Kellogg upon the completion of its contract. (Emphasis supplied.) This language of the complaint implies or expressly concedes that monies were not currently due Kellogg at the time the complaint was instituted; thereby indicating that Kellogg was suing Concrete and Fombell for a liability which would mature at a future time.

Furthermore, both the attachment affidavit and the language of the complaint state a claim in the alternative, that is, based on the threshold allegation that Kellogg had previously paid Fombell all monies due Fombell, Kellogg further alleges that either Fombell *or* Concrete has been overpaid and has been unjustly enriched to the extent of Concrete's recovery of $24,692.50 from Allegheny Power System through the use of the mechanic's lien. By the use of this language making alternative claims, Kellogg premises its attachment and claim upon an unliquidated and contingent liability.

On this appeal, Concrete relies upon the juridical rule that the judgment of the trial court is presumed to be correct. In this respect, we are in strong agreement with the appellee that the presumptions favor the judgment when the record in support of the judgment is bereft of testimony or other proof to the contrary:

> "An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment." Syllabus point 5, *Morgan v. Price,* 151 W.Va. 158, 150 S.E.2d 897 (1966).

The parties to this appeal concede that attachment and garnishment are purely statutory remedies. Being in derogation of the common law and harsh in effect upon debtors, the statutes are to be strictly construed to determine whether the plaintiff has correctly sued out the attachment. *DeLung v. Baer,* 118 W.Va. 147, 189 S.E. 94 (1936); *Delaplain & Company v. Armstrong,* 21 W.Va. 211 (1882).

Kellogg makes an initial attack upon the correctness of the court's judgment in that it was rendered in response to an unverified pleading, which the statute in question providing the method of defense to an attachment proceeding indicates that the plea shall be verified. See *Code* 1931, 38-7-33, *supra.* The answer to this contention is short and simple. The procedural requirement set forth in Section 33, *id.,* as to verification, is abrogated and supplanted by the express provisions of *Rule* 11, West Virginia Rules of Civil Procedure, which provide, *inter alia:*

> "Except when otherwise specifically provided by these rules, pleadings need not be verified or accompanied by affidavit, even though the pleadings to which they respond are verified or accompanied by affidavit."

The late Professor Silverstein interprets the meaning of that section. "The concept of Rule 11 is that the signature of counsel should take the place of the ancient formality of verification or affidavit," with the qualification that specific provisions of the *Rules* may otherwise provide. LUGAR & SILVERSTEIN, WEST VIRGINIA RULES, at pages 93-94 (1960); Accord, 2A M.J. *Attachment and Garnishment* § 84 (1969). The appellant's argument for formalism is also misdirected and late. *Code* 1931, 38-7-33 provides for an attack on the merits of the attachment. It contemplates the filing of an *answer* followed by a trial to prove or disprove the existence of grounds for the attachment.

On the other hand, Section 32 preceding permits a preliminary attack upon the sufficiency of the affidavit—the instrument which alleges the statutory grounds and which, if valid, gives the forum court jurisdiction to entertain the attachment *eo instante*. One attacks the sufficiency of the affidavit by motion to quash or, under the *Rules,* by motion to dismiss. See *Rule* 12 (b) (6). Well before the statutory provisions of the *Rules* were a mere glimmer of hope in the contemplation of pleading drafts-men, this Court had approved an informal method of attacking an attachment affidavit. In *Simmons v. Simmons,* 56 W.Va. 65, 68, 48 S.E. 833 (1904), Judge Poffenbarger, writing for a unanimous Court, recognized that an *oral* motion to quash an affidavit of attachment would serve as well as a more formal written plea in abatement and thereupon quashed the attachment for insufficiency. Apparently, neither writing nor verification were the order of the day in 1905. While "writing" is now encouraged by *Rule* 7 (b) (1), verification is not today's usual requirement. *Rule* 11, *supra*.

Following the assertion of the ground that the affidavit fails to state a claim upon which relief could be granted, a court is duty bound to test the affidavit for sufficiency. "The court may, of its own motion, dismiss an irregular attachment. . . ." 2A M.J., *Attachment and Garnishment* § 49 (1969), citing *Haymond v. Camden,* 22 W.Va. 180

(1883). On this review, we shall look for apparent defects which may have compelled the lower court's ruling that the affidavit was insufficient in law.

As previously noted, Kellogg pleads in the alternative in both its affidavit and in its complaint. In doing so, it asserts an unliquidated and contingent liability against the defendant Concrete. On the facts alleged, Concrete will be liable only if it should be demonstrated that it has been paid once previously for its services under contract to Fombell and has collected a double recovery through the assertion of its mechanic's lien. This Court has held that a contingent liability is not subject to an order of attachment and garnishment. *Minotti v. Brune,* 94 W.Va. 181, 118 S.E. 149 (1923); accord, *Kesler v. Lapham,* 46 W.Va. 293, 33 S.E. 289 (1899). In the *Minotti* decision, Judge Litz reasoned as follows:

> " 'A contingent debt, though arising out of contract, can not be garnisheed, as it would be unjust to the garnishee to render a judgment against him on a contract when the amount apparently due, according to the terms of the contract, may be extinguished by subsequent events. . . .'

> "In order to attach a debt due in the future it must be a certain debt which will become payable upon the lapse of time and not a contingent liability, which may become a debt or not on the performance of some other acts or the happening of some uncertain event. Drake on Attachments and Garnishment, sec. 559." *Id.*, at pages 187-88 of the West Virginia Report.

Consequently, an affidavit of attachment asserting a contingent liability against one of two defendants in the alternative is fatally defective. As also pertinently put by Judge Brannon in the *Kesler* case, *supra*:

> "[S]urely, in stating the nature of the claim, the particular one of two parties owing the demand ought to be stated. The affidavit therefore and the attachment should have been quashed." *Id.*, at page 298 of the West Virginia Report.

The affidavit additionally fails the test formulated by the case of *Hovatter v. Rowlesburg Lumber Company,* 100 W.Va. 449, 451-452, 130 S.E. 662 (1925). That case held the nature of the plaintiff's claim was not presented in the allegations of the affidavit. Its defect was that it did not show between whom the contract was made nor did it explain how the plaintiff's claim originated. This same deficiency obtains in the affidavit of Kellogg. No specifics were pleaded to demonstrate that Kellogg's claim originated from a contractual provision made by it with the Allegheny Power System, nor was there any allegation of privity to indicate that Kellogg had a contractual relationship with Concrete.

As another reason to demonstrate the validity of the trial court's decision, Concrete points to the obvious inconsistency between the language used in the affidavit of attachment and garnishment *vis-a-vis* the language employed in the complaint, each supposedly stating the precise nature of the claim. Concrete says that the court properly should compare the nature of the claim asserted in both instruments, and if they are shown to be materially different, the order of attachment must fail. This is the rule adopted in this jurisdiction in the cases of *Simmons v. Simmons, supra,* and *Snowden v. Thompson,* 98 W.Va. 77, 126 S.E. 405 (1925). These cases specifically held that inconsistency between the claim in the affidavit of attachment and the demands set up in the declaration (now complaint), constitutes a variance fatal to the attachment. In the *Simmons* case, *supra,* at page 66 of the West Virginia Report, the Court explained its reasons as follows:

> "As the declaration is the basis of the main action, as to which the attachment is a mere ancillary proceeding, the claim or demand set forth in the former must be regarded as the one intended to be enforced. Since the demand set up in the affidavit differs from it, the plaintiff fails to comply with that requirement of the statute which says the affidavit shall state the nature of the plaintiff's claim. It does not state the claim

shown by the declaration, but a different claim."

More succinctly, the Court summarized:

> " 'A plaintiff may not attach for one cause of action, and having sustained his writ, declare for another.' [Citations omitted.] * * * The cases uniformly hold that a difference *in substance* between the declaration and affidavit is fatal, . . . ." (Emphasis supplied.) *Id.,* at page 67.

In accord is the earlier cases of *Sommers v. Allen,* 44 W.Va. 120, 123, 28 S.E. 787 (1897).

The adoption and promulgation of the Rules of Civil Procedure in this jurisdiction do not affect the validity of those holdings. The West Virginia Rules of Civil Procedure have considerably liberalized the rules of pleading as respects stating a claim or defense in a civil action. See *Rules* 8(a), 8(e)(2), and 18 permitting alternative, inconsistent and "mixed" pleadings. Variance in pleading is encouraged to simplify the statement of claims and defenses so as to bring about a complete resolution of conflict in the trial of a single civil action. Variance in substance, however, as to attachment proceedings has not been legitimatized by the adoption of the *Rules.* Attachment is a harsh remedy, subject to abuse and in derogation of the common law. To successfully employ its remedies, one must bring his claim for relief within the strict provisions of the statute. Being merely ancillary to the underlying civil action, attachment must be supported by an affidavit which, in turn, must be consistent with the nature of the claim for relief alleged in the complaint. See, *Deming National Bank v. Baker,* 83 W.Va. 429, 98 S.E. 438 (1919); *Miller v. Whittington,* 77 W.Va. 142, 87 S.E. 164 (1915); *Home Distilling Company v. Himmel,* 74 W.Va. 756, 82 S.E. 1094 (1914).

Undoubtedly, Kellogg was inhibited by the provisions of *Code* 1931, 38-7-5, from alleging in its affidavit that the claim it had against Concrete would become due in the future when its sole ground for attachment was the

nonresidence of Concrete. That statute expressly provides, *inter alia:* "[A]n attachment shall not be sued out against a foreign corporation for a debt not due, upon the ground alone that it is a foreign corporation, . . . ." An attachment for a debt not due, based upon the singular ground that the defendant is a foreign corporation, must fail. *Miller v. Ziegler,* 44 W.Va. 484, 29 S.E. 981 (1898). Knowing this to be the proscription of the statute, Kellogg apparently sought to avoid the strict provisions of the *Code* by alleging that the claim was presently due in its affidavit. In its civil action complaint, however, it conceded that its claim was prospective, based upon anticipations that Allegheny Power System would make deductions from retainages. Such a variance is fatal to the affidavit.

For the foregoing reasons, we hold the record in this appeal does not support the error alleged by Kellogg and it is presumed that the Circuit Court of Harrison County acted properly in entering judgment quashing the affidavit for attachment. *Code* 1931, 38-7-32. *Minotti v. Brune, supra; Hovatter v. Rowlesburg Lumber Company, supra; Simmons v. Simmons, supra; Snowden v. Thompson, supra; Haymond v. Camden, supra; Stevens v. Brown,* 20 W.Va. 450 (1882).

The judgment of the Circuit Court of Harrison County is affirmed.

*Affirmed.*