387 S.E.2d 848

**WACO EQUIPMENT COMPANY**

v.

**B.C. HALE CONSTRUCTION COMPANY, INC., a/k/a B.C. Hale Construction Co., et al.**

No. 18852.

Supreme Court of Appeals of West Virginia.

Dec. 20, 1989.

James Allan Colburn, Baer, Robinson & Colburn, Huntington, for Waco Equipment Co.

James R. Watson, Steptoe and Johnson, Charleston, for B.C. Hale Const. Co., Inc. a/k/a B.C. Hale Const. Co. et al.

PER CURIAM:

This is an appeal by Waco Equipment Company (Waco) from the March 22, 1988 order of the Circuit Court of Mercer Coun-

ty. We have before us the petition for appeal, the briefs of the parties, and the record, as designated by the parties.[1] This case concerns a consolidated action to determine which of several creditors of a construction subcontractor are entitled to the retainage of a construction subcontract being held by the general contractor.

The parties in this action are: appellees, American Health Enterprises, the owner of a facility to be constructed; Turner Construction Company, the general contractor; Federal Insurance Company, surety on a performance and payment bond obtained by Turner, the general contractor; B.C. Hale Construction Company, the subcontractor of Turner who, prior to entering into the subcontract, owed money to the appellant Waco for equipment Hale purchased that is wholly unrelated to the construction project; Pounding Mill Quarry Corporation, and Compton Construction Company, perfected mechanic's lienholders who were not fully paid by Hale, the subcontractor, for stone and concrete they delivered to the construction site pursuant to the requirements of the subcontract;[2] and appellant, Waco Equipment Company, an old judgment creditor of Hale, the subcontractor, who filed a writ of suggestion on the retainage of the Turner–Hale subcontract.

After hearing evidence on the consolidated action, the trial court held that the two materialmen of the subcontractor, Hale, who had perfected mechanic's liens, Pounding Mill and Compton, were entitled to the retainage of a construction subcontract, being held by Turner, the general contractor, to release their liens on the owner's real property. The court also held that appellant, Waco, the old judgment creditor of Hale, was not entitled to a suggestion lien on the retainage because Hale, the subcontractor, had no right to the retainage which under the subcontract was specifically designated for the purpose of releasing liens created by Hale, the subcontractor's failure to pay laborers and materialmen. The appellant Waco, the creditor, contends that the trial court erroneously concluded that Waco was not entitled to a suggestion lien on the retainage. We affirm.

Hale, the subcontractor, has been a debtor of Waco since 1983, when Hale failed to pay for roughly $44,000 worth of equipment. Since 1983 Waco had judgments in the Circuit Court of Cabell County against Hale for the amount owed, plus interest. For reasons not apparent in the record, Waco was unable to execute on the judgments.

In 1986 Hale obtained a roughly $450,000 subcontract from Turner, the general contractor. Waco learned of the subcontract on November 5, 1986. Waco obtained another judgment against the subcontractor, and its president, John F. Hale, in the Circuit Court of Mercer County and commenced garnishment proceedings against Turner, the general contractor, for the retainage Turner held under the subcontract.[3]

---

1. The record in this consolidated action was designated by the parties pursuant to *W.Va. R.App.P.* 4A(c). The record contains various documents, court orders and selected pages of a deposition in *Waco Equipment Company v. B.C. Hale Construction Company, Inc.* (Mercer County Circuit Court, No. 86–C–1188F), and the mechanic's liens and pleadings in the execution action in *Pounding Mill Quarry Corp. v. American Health Enterprises, LTD., et al.* (Mercer County Circuit Court, No. 87–C–201–F) and *Compton Construction Company d/b/a Princeton Ready–Mix Co., Inc. v. American Health Enterprises, LTD., et al.* (Mercer County Circuit Court, No. 87–C–200–F).

2. Materialmen are included in the Mechanic's Lien Statute, *W.Va.Code*, 38–2–1, *et seq.* [1923]. *W.Va.Code*, 38–2–3 and –4 [1923] provide that materialmen who are not fully compensated for their supplies have a mechanic's lien as provided in *Code*, 38–2–1, *et seq.* It is undisputed that the materialmen properly perfected and timely sought execution of their liens by complying with the requirements of *W.Va.Code*, 38–2–8 through 38–2–13 [1923]. Both materialmen began delivering their supplies to the project by no later than the first week of April, 1986; therefore, their liens against the owner's property are effective as of that period. *W.Va.Code*, 38–2–17 [1973]; syl. pt. 3, *Carolina Lumber Co. v. Cunningham*, 156 W.Va. 272, 192 S.E.2d 722 (1972).

3. Waco's prior judgments, which were solely against B.C. Hale Construction Company, Inc. and its predecessor corporations, were obtained in Cabell County, Hale's corporate location. Garnishment proceedings against Turner were

On November 16, 1986, Hale, the subcontractor, left the job, without fully paying (among others) the two materialmen, Pounding Mill Quarry Corporation and Compton Construction Company. Hale had a combined debt to the two materialmen for roughly $36,000, plus interest. The two materialmen perfected mechanic's liens on the facility under construction, owned by American Health Enterprises. The perfected liens were effective the first week of April, 1986, the period when each of the materialmen first delivered the supplies. *See* note 2, *supra.*[4]

Under *W.Va.Code*, 38–5–10 [1923], a judgment creditor may commence garnishment proceedings by filing a writ of suggestion against a third party (stakeholder) when the judgment creditor alleges that:

> [S]ome person is indebted or liable to the judgment debtor or has in his possession or under his control personal property belonging to the judgment debtor, which debt or liability could be enforced, when due, or which property could be recovered, when it became returnable, by the judgment debtor in a law court,....

Waco alleged that the amount in the retainage clause being held by Turner, the general contractor, under its subcontract with Hale was a debt owed to Hale, and therefore subject to garnishment through a suggestion lien pursuant to *Code*, 38–5–10.

The circuit court issued a summons to Turner, the general contractor requiring Turner to answer the suggestion pursuant to *Code*, 38–5–10 [1931].[5] Turner, the general contractor, answered that although it retained $39,000 under the subcontract, these funds were specifically earmarked under the subcontract for the release of unpaid mechanic's liens associated with the subcontract that were created by Hale, the subcontractor's failure to fully pay labor and materialmen. Since such debts existed and such liens were filed against the owner's property, under the terms of the subcontract, Hale, the subcontractor, forfeited any right to the retainage; therefore, Turner contended, it did not owe Hale.

The court ordered a full accounting of the subcontract, placed the balance, $39,000, in receivership, consolidated the two materialmen's actions, totaling roughly $36,000, plus interest, with the suggestion action for $44,000, plus interest, and heard evidence from all the parties. *W.Va.Code*, 38–5–15 and *W.Va.Code*, 38–5–18 [1923].

The critical evidence supplied to the court was the subcontract. Under the subcontract, Turner, the general contractor, did not require Hale, the subcontractor, to obtain a performance and payment bond. Instead, it was a progress payment contract that contained a retainage clause. Rather than paying Hale the lump sum ($450,000) upon completion of the work, Turner made monthly payments to Hale, the subcontractor, upon proof of completed work and supplied materials over the course of the previous month.

From the monthly amount paid for each progress payment, Turner, the general contractor, deducted 10% and retained it.

The parties agreed that the 10% retainage would be paid to Hale, the subcontrac-

---

4. The materialmen's perfected mechanic's liens on the facility (real property) were effective as of April, 1986. *W.Va.Code*, 38–2–1 and 17 [1923]. The Waco writ of suggestion on the subcontract retainage (personalty) was original- ly delivered to the sheriff for execution on November 26, 1986. Under *W.Va.Code*, 38–4–8 [1923], the Waco lien on the retainage was created on the date of delivery for execution.

commenced in Mercer County, where Turner and the retainage were located. *W.Va.Code*, 38–5–10 [1923]. Waco obtained another judgment in Mercer County against the B.C. Hale Construction Company, Inc., which also included John F. Hale, personally, on the judgment, and then commenced the garnishment proceedings against Turner in Mercer County. The necessity of receiving a new judgment in Mercer County in order to commence garnishment proceedings has not been raised by the parties.

5. Originally, the circuit court entered summary judgment against Turner, the general contractor, in the garnishment proceeding on November 28, 1986, when Turner failed to answer as required by *W.Va.Code*, § 38–5–10. However, the court subsequently granted Turner's *W.Va. R.Civ.P.* 60(b) motion and set aside the order, by order dated March 19, 1987, and Turner was permitted to answer the summons. *See W.Va. Code,* § 38–5–17 [1923] authorizing the trial court to conduct additional proceedings when a garnishee fails to answer a summons.

tor, forty days after the subcontractor completed the job,

> provided, first, however, ... (2) the Subcontractor shall have furnished evidence satisfactory to Turner that there are no claims, obligations or liens outstanding or unsatisfied for labor, services, materials, ... furnished or incurred for or in connection with the Work and (3) ...

If any claim or lien is made or filed with or against Turner, the Owner, the Project or the premises by any person claiming that the Subcontractor or any subcontractor or other person under it has failed to make payment for any labor, services, materials, equipment ... or incurred for or in connection with the Work or if at any time there shall be evidence of such nonpayment or of any claim or lien for which, if established, Turner or the Owner might become liable and which is chargeable to the Subcontractor.... Turner shall have the right to retain from any payment then due or thereafter to become due an amount which it seems sufficient to (1) satisfy, discharge and/or defend against any such claim or lien or any action which

may be brought or judgment which may be recovered thereon.

The purpose of the retainage clause was to protect Turner, the general contractor, from liability for mechanic's liens filed against the owner's property by debtors of Turner's subcontractors. Under the terms of the general construction contract between Turner and the owner, American Health Enterprises, the owner had limited the liability of the property for the release of mechanic's liens to the general construction contract price, as provided in *W.Va. Code*, 38-2-22 [1923]. Therefore, if such liens were filed against the owner's property that were not in excess of the general construction contract price, then Turner, the general contractor, and its surety would be required to pay the debts in order to release the liens on the property.[6]

Hale, the subcontractor, left the job on November 16, 1986, with numerous creditors associated with the subcontract, as indicated in the final accounting.

■ The trial judge ruled that the roughly $39,000 [7] in retainage under the subcontract would be paid to the two materialmen to release their liens against the project, according to the terms of the subcontract.[8]

---

**6.** *W.Va.Code*, 38-2-22 [1923] provides, in pertinent part:

> Any owner may limit his liability upon a contract ... to the sum agreed therein ... by recording his contract with the general contractor ... and by requiring to be given by his general contractor ... a valid and solvent bond in a penalty equal to the contract price ...
>
> Any such owner who shall cause his general contract to be recorded in such clerk's office and who shall cause to be executed and recorded the bond therewith as hereinbefore provided shall be exempt from the payment of more than such contract price, and his property shall likewise be exempt therefrom, and all such liens created by this article as are not fully satisfied and discharged by such owner, by reason of such recordation, shall be paid by such contractor and his surety on such bond. If liens in excess of the contract price are perfected as provided in this article, the owner shall be liable to each lien claimant pro rata, in the proportion which the contract price bears to the total amount of the liens so perfected.

The parties have not supplied the Court with the general contract. However, *W.Va.Code*, 38-2-26 [1923] requires the mechanic's lienholder to name as parties to the execution action the

general contractor and its surety, when the owner has opted to limit its liability to the contract price under *W.Va.Code*, 38-2-22. Both materialmen in this case complied with *Code*, 38-2-26. The pleadings in their actions further indicate that the owner limited its liability by recording the contract and requiring a bond.

**7.** Ten percent of $450,000 is $45,000. This represents the total amount retained under the subcontract. However, the subcontractor left the job on November 16, 1986. The court order for the accounting was entered on March 19, 1987. The general contractor's accounting reveals that during that four-month interval, the general contractor paid roughly $6,000 out of the $45,000 to various creditors of the subcontractor. Therefore, $39,000 in retainage remained.

**8.** The appellant's contention that the trial court erred by providing materialmen's liens on the retainage rather than the owner's improved realty, as required by *W.Va.Code*, 38-2-1 and 4 [1923] is without merit. The liens were created against the owner's improved realty. However, the retainage under the subcontract was properly used to release the materialmen's liens because the owner had complied with *W.Va.Code*, 38-2-22 [1923] and limited the property's liabili-

In conjunction with this holding the trial judge also held that Waco, the judgment creditor, had no right to a suggestion lien on the retainage in the subcontract. The trial judge reasoned that under *W.Va. Code*, 38–5–10, Waco is entitled to a lien on the retainage only if Turner owed the retainage to Hale. Since Hale failed to perform the terms of the subcontract concerning full payment of the materialmen, the materialmen, rather than Hale, were owed the $39,000 retainage; therefore, there was no debt owing to Hale that was subject to a suggestion lien. The appellant contends that the trial judge erroneously concluded that Turner did not owe Hale the retainage.[9]

■ "It is the general rule that a plaintiff can recover on a suggestion only when the garnishee is liable to the defendant [debtor]." Syllabus Point 1, in part, *Emmons–Hawkins Hardware Company v. Sizemore,* 106 W.Va. 259, 145 S.E. 438 (1928). *Accord,* syl. pt. 5, *R.S. Corson Co. v. Hartman,* 144 W.Va. 790, 111 S.E.2d 346 (1959). In a strikingly similar case to the one before the Court today, *M.W. Kellogg Co. v. Concrete Accessories Corp.,* 157 W.Va. 763, 204 S.E.2d 61 (1974), we addressed when contractual proceeds may be considered a liability, subject to garnishment.

In *Kellogg,* an attachment proceeding,[10] the owners of a power company contracted with Kellogg, the general contractor, for the construction of a power station. The general contract contained a retainage clause. Kellogg, the general contractor, subcontracted a portion of the labor. The subcontract did not contain a retainage clause. A materialman supplied $24,000 in goods to the subcontractor. Kellogg, the general contractor, paid the subcontractor the full amount owed under the subcontract, $55,000, which, of course, was intended to include the cost of labor and materials.

The materialman subsequently filed a mechanic's lien against the power station for the $24,000 in goods, alleging that the subcontractor failed to pay. The owner of the power station paid the debt owed the materialman in order to release the lien.

Kellogg, the general contractor, *assumed* that the owner of the power station would deduct the amount paid the materialman from the retainage clause contained in the general contract; therefore, Kellogg, the general contractor, filed a civil action and simultaneously instituted attachment proceedings against the property of either the subcontractor or the materialman (since Kellogg did not know whether the subcon-

---

ty to the contract price, as indicated in the pleadings of the materialmen's execution actions. *See* note 6, *supra.* The amount remaining under the subcontract is considered as having "naturally emanated from the owner." *Bluefield Supply Co. v. M.P. Smith,* 115 W.Va. 537, 546, 177 S.E. 296, 300 (1934). Therefore, the retainage remains as part of the "contract price" and is a source from which the liens may be released.

9. Under the appellant's theory the general contractor would be required to surrender the retainage funds to extinguish the subcontractor's old debt which was unrelated to the project. However, the general contractor, through its contract with the owner, would then also be liable for the release of the mechanic's liens against the project that resulted from the subcontractor's failure to pay the materialmen and laborers associated with the project. Syl. pt. 5, *Southern Erectors v. Olga Coal Co.,* 159 W.Va. 385, 223 S.E.2d 46 (1976). This is precisely what the retainage clause was designed to prevent.

10. Suggestion and attachment are both forms of garnishment proceedings available for judgment creditors. In a suggestion action the creditor is seeking a lien on a debt owed by a third-party to the debtor. *W.Va.Code,* 38–5–10. In an attachment action, the creditor is seeking a lien directly on the property of the debtor for the debt owed. *W.Va.Code,* 38–7–1 [1981]. Debtors subject to attachment proceedings are those who are debtor foreign corporations and debtors who are allegedly attempting to avoid process of execution through other means. *W.Va.Code,* 38–7–2 [1923].

The suggestion actions requires a creditor to establish that the third party owes to the debtor a "debt or liability [that] could be enforced, when due ... by the judgment debtor in a law court[.]" *Code,* 38–5–10. Likewise, the attachment action requires the creditor to establish that a claim or debt is due or "in case a claim or debt be not due, must show when it will become due." *Code,* 38–7–5 [1923].

tractor kept all the subcontract proceeds or paid the materialman).

The trial judge denied the subcontractor's and materialman's motions to dismiss the complaint in the civil action, but granted their motions to quash the attachment proceeding. We affirmed.

In doing so, this Court noted that, at the time, Kellogg, the general contractor, filed the civil action, the power station owner had not yet exercised its rights under the retainage clause, therefore, "Kellogg was suing [the materialman] and [the subcontractor] for a liability which *would mature* at a future time." (emphasis added). *Kellogg*, 157 W.Va. at 767, 204 S.E.2d at 64. On the other hand, Kellogg, the general contractor, was seeking to attach the property of the materialman for an "unliquidated and contingent liability.... [The materialman] will be liable only if it should be demonstrated that it has been paid once previously for its services [by the subcontractor] and has collected a double recovery through the assertion of its mechanic's lien." *Kellogg*, 157 W.Va. at 770, 204 S.E.2d at 66.

We then reviewed our prior cases concerning the susceptibility of contingent contractual liability to garnishment proceedings. Specifically, we noted and reaffirmed our prior ruling in *Minotti v. Brune*, 94 W.Va. 181, 118 S.E. 149 (1923) in *Kellogg*, 157 W.Va. at 770, 204 S.E.2d at 61:

' "A contingent debt, though arising out of contract, can not be garnisheed, as it would be unjust to the garnishee to render a judgment against him on a contract when the amount apparently due, according to the terms of the contract, may be extinguished by subsequent events...."

'In order to attach a debt due in the future it must be a certain debt which will become payable upon the lapse of time and not a contingent liability, which may become a debt or not on the performance of some other acts or the happening of some uncertain event. Drake on Attachments and Garnishment, sect.

559.' [*Minotti*, 94 W.Va. at 187, 188, 118 S.E. at 157.]

■ In affirming the trial judge's decision to quash the attachment in *Kellogg*, we concluded in syllabus point 1:

'An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.' Syllabus point 5, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966).

■ In *Kellogg*, there was no error because the debt that the creditor sought to attach was a contingent liability, which, due to its uncertainty, is not subject to garnishment, as indicated in syllabus point 4: "A contingent liability, *ex contractu*, is not subject to an order of attachment and garnishment."

■ In the case before the Court today, under the terms of the subcontract, Turner, the general contractor, had limited its liability and was not required to pay Hale, the subcontractor, the 10% retainage until, among other things, Hale provided proof to the general contractor that there were no outstanding liens against the project created by Hale's failure to fully pay laborers and materialmen. Turner's liability to Hale was contingent upon Hale's performance of the terms in the subcontract. Clearly, Hale never complied with the terms of the subcontract when it left the job with outstanding debts and liens associated with the subcontract. Therefore, the trial judge properly concluded that there was no debt owed Hale, the subcontractor, against which Waco, the judgment creditor, could attach a suggestion lien.[11]

Affirmed.

**11.** One additional assignment of error was raised by the appellant.

By letter dated June 6, 1986, B.C. Hale Construction Company's president notified the general contractor that he had "formed a new company," West Virginia Ebony Construction, which would be "assuming all duties" of B.C. Hale Construction. There was never a formal novation of the subcontract; however, the general contractor paid the monthly progress payments made under the subcontract to West Virginia Ebony Construction after that date.

The civil actions to execute the mechanic's liens were filed by the materialmen after John Hale had informed the general contractor that he "formed a new company," Ebony Construction. The record does not indicate whether B.C. Hale Construction, the original corporation, was dissolved. The materialmen filed the action against Ebony Construction as the subcontractor. Pounding Mill alleged that it delivered goods according to the subcontract specifications as directed by John Hale. Compton Construction alleged that Hale as president of Ebony assured Compton that Ebony would assume the debts of B.C. Hale.

When the trial judge found that the materialmen had timely perfected their liens and were entitled to the retainage under the subcontract, he specifically declined to reach a determination as to whether Ebony was the successor corporation to B.C. Hale.

The appellant contends that the trial judge could not determine that the materialmen's liens could be released with the retainage funds without such a finding because the materialmen would lack privity of contract.

We note that neither the owner nor the general contractor has ever disputed that the materials were integrated into the improved property. *See* syl. pt. 2, *Pittsburgh Steel Product Corp. v.*

*Huntington Masonic Temple Assoc.,* 81 W.Va. 222, 94 S.E. 127 (1917). Further, article XIX of the subcontract provided that if the subcontractor assigned or sublet the subcontract:

Turner's consent to any assignment or subletting shall not relieve the Subcontractor of any of its agreements, duties, responsibilities or obligations under this Agreement and the other Contract Documents, and the Subcontractor shall be and remain as fully responsible and liable for the defaults, neglects, acts and omissions of its assignees and subcontractors and all persons directly or indirectly employed by them as it is for its own defaults, neglects, acts and omissions and those of its own officers, agents, servants and employees. The Subcontractor shall bind each of its subcontractors to all of the terms, provisions and covenants of this Agreement and the other Contract Documents with respect to the sublet Work.

More importantly, however, the mechanic's liens were properly perfected and the execution actions timely filed. Therefore, the materialmen are entitled to a lien on the realty which may be released from the retainage funds under *Code,* 38–2–22, regardless of privity. The remedy provided by the mechanic's lien statute, is distinct from a personal decree against the general contractor. Privity of contract is relevant when the materialman or laborer fails to properly perfect the lien under the statute and subsequently attempts to recover, without the aid of the statute, under, a contract theory, a personal judgment from either the owner or the general contractor. *Woodford v. Glenville State College Corp.,* 159 W.Va. 442, 225 S.E.2d 671 (1976), applied in *In re Williamson Shaft and Slope,* 20 B.R. 73 (Bankr.S.D.Ohio, 1982).