WILLIAM S. GEE

*v.*

EDWARD STONE GIBBS

(No. CC902)

Decided March 27, 1979.

*Keefer, McKay & Honecker, E. Douglas McKay* for plaintiff.

*Phillips, Holden, Marshall & Gardill, George S. Hazlett* for defendant.

McGRAW, JUSTICE:

This case, properly before this Court on certified question by the joint application of the parties pursuant to W.Va. Code § 58-5-2, involves two limited and narrow questions of law which emanate from the following trust provision:

> This Trust shall terminate upon the death of the said Joan S. Gibbs, at which time the principal and any undisturbed income from the Trust Estate shall be distributed in equal shares to the four Settlors [including Edward Stone Gibbs]. Should any of the Settlors be then deceased, the distribution from the Trust Estate shall be made to the estate of the Settlors or to the beneficiaries thereof should the administration of said estate be complete.

West Virginia was the situs of the trust created by this instrument.

In 1973 Gibbs, as principal maker, executed a note payable to the Morris Plan Bank & Trust Company of Wheeling, West Virginia, and received all the proceeds therefrom. Plaintiff Gee signed the note as an accommodation maker.

In 1975, Gibbs defaulted on the payment of the note, and Gee paid the balance due. Gee then instituted suit in West Virginia against Gibbs who was a nonresident of West Virginia. Gee attempted to obtain jurisdiction by attachment and garnishment of Gibbs' interest in the trust, an Ohio County, West Virginia, banking institution being the designated garnishee. Gibbs moved to dismiss on four grounds: lack of jurisdiction over the subject matter; lack of jurisdiction over the person; improper venue; and failure to state a claim upon which relief may be granted. Judge McClure overruled the motions to dismiss.

Judge McClure, upon joint motion of the parties, now certifies to this Court the following questions:

1. Whether the remainder interest of defendant Gibbs in the trust is vested or contingent, and

2. Whether it may be attached to confer jurisdiction on the circuit court.

Basically what we have before us is:

ABCD to their mother, M, for life, remainder to ABCD.

## I.

The answer to the first question is elementary. As Plaintiff Gee points out, the remainder in the trust has to be a vested one or there is no such thing as a vested remainder.

The leading authority on future interests, Lewis Simes, explains the difference well in L. Simes *Handbook of the Law of Future Interests*, 20 (1966):

The essence of the vested remainder is that, throughout its continuance, it is ready to take

effect as a present interest however and whenever the preceeding estate terminates. On the other hand, the contingent remainder is a remainder subject to a condition precedent. That is to say, there is a condition precedent, *other than the termination of the prior estate*, which must occur before it is ready to take effect as a present interest. *It should be noted that the existence of a divesting condition does not make a remainder contingent* (emphasis added).

Gibbs argues that "[t]he interests of the defendant in the trust sought to be attached are contingent—mere possibilities of interests. The defendant must survive a life tenant in order to have a vested interest." No support can be found for this statement. The fact that Gibbs has to wait until the life estate expires before enjoying the remainder does not make his remainder contingent. It is vested now, the only uncertainty is whether the estate will ever be enjoyed, since A could predecease M. The remainderman A, has an immediate right of future enjoyment.[1]

It is true that ABC and D must survive M in order to take possession of the remainder. But only the exercise of the right (his taking of possession) depends upon their survival. The right to the remainder is already vested.

The case law in West Virginia fully supports this view. *E.g. Bland v. Davisson*, 77 W.Va. 557, 88 S.E. 1021 (1916); *Diehl v. Cotts*, 48 W.Va. 255, 37 S.E. 546 (1900); *Williamson v. Jones*, 39 W.Va. 231, 19 S.E. 436 (1894); *Chipps v.*

---

[1] A true contingent remainder would be something like this:
ABDC to M for life, remainder to A if A marries X.
In this example, A's *right* is contingent upon his marriage to X. He has no vested right. In the case at bar, ABCD have vested remainders right now. There is no contingency that must occur before they have the right to the remainder.
Another example appears in the third syllabus point of *In re Conley*, 122 W.Va. 559, 12 S.E.2d 49 (1940):
"A devise to A for life and, if he dies without heirs of his body, then to B, creates a contingent remainder which vests in B only if and when the contingency occurs."

*Hale*, 23 W.Va. 504 (1884). Two of the more recent cases that are most clearly supportive merit brief mention.

The fourth syllabus of *In re Conley*, 122 W.Va. 559, 12 S.E.2d 49 (1940) reads:

> A devise to A for life, and at A's death, then to B creates a remainder in B which vests immediately upon testator's death.

Similarly, in *Smith v. Smith*, 134 W.Va. 842, 62 S.E.2d 347 (1950) the Court held in its sixth syllabus that:

> A remainder, created by will, immediately following a determinable life estate, vests at testator's death.

But the expression of our law that most clearly and forcefully shows the error in defendant's argument is this eighth syllabus point in *Smith v. Smith*:

> The uncertainty of ever taking effect in possession does not make a remainder, having all the necessary prerequisites of a vested remainder, a contingent remainder by reason of such uncertainty. The present capacity of taking effect in possession if and when the possession becomes vacant, distinguishes a vested remainder from a contingent remainder.

These long-standing, universal undisputed rules of property law thus compel, the conclusion that defendant's remainder interest in the trust is vested, not contingent.

## II.

A more important question remains to be answered. Can a vested remainder interest in a trust, the situs of which is West Virginia, be attached pursuant to W.Va. Code §§ 38-7-1 *et seq.* so as to confer *quasi in rem* jurisdiction in a circuit court.

The parties in oral argument both agreed that a circuit court can obtain jurisdiction by attaching the property of nonresident debtor located in the county, and our case law supports this position.

Our leading case, *Tennant's Heirs v. Fretts*, 67 W.Va. 569, 68 S.E. 387 (1910), involved an equity suit to remove the cloud on title to land located in Monongalia County, West Virginia. The dispute arose when the owner of that property died, and his heirs sought to convey a vein of coal lying thereunder. The purchasers refused to complete the transaction after discovering a written contract relating to the land and an assignment thereof recorded in the county courthouse. The heirs then brought suit to cancel the contract against the original grantee under the contract and the assignee, both of whom were nonresidents.

The pertinent issue and holding in that opinion, which follows the territorial power theory of state court jurisdiction, speaks for itself:

> The ... question is ... [whether] the court [is] authorized to grant relief in this case upon an order of publication against a non-resident? We think it is. Of course a court can not pronounce a judgment, or decree, that will be binding on the person of the non-resident defendant, or that can have any force or effect whatever beyond the territorial jurisdiction of the court, upon other than personal service of process. The leading case of *Penoyer v. Neff*, 95 U.S. 714 [sic], settles this principle. But where the proceeding is *in rem*, as upon attachment of property, or where the judgment or decree is to settle and determine the title to real estate within the court's jurisdiction, it is competent for the legislature to provide for service of process by publication against a non-resident defendant." *Cooper v. Reynolds*, 10 Wal. 308; *Arndt v. Griggs*, 134 U.S. 316; *Witten v. St. Clair*, 26 W.Va. 762 [1886]. *Id.* at 573-74, 68 S.E. 389.

Also in *Norman v. Willis*, 88 W.Va. 76, 79, 106 S.E. 252, 253 (1921), the Court stated:

> The attachment issued on March 15, 1919, was levied that day on property of the defendant in

the county of Roane. This gave the court juris-
diction ... Under [W.Va. Code § 38-7-1] a suit
against a nonresident cannot be maintained sim-
ply on the ground that the cause of action arose
in the county. There must be some other ground,
and if it appears that the nonresident defendant
has property or debts in the county, then that
fact is sufficient to maintain the jurisdiction.

Similarly in syl. pt. 1, *Byrd v. Rector*, 112 W.Va. 192,
163 S.E. 845 (1932), *overruled on other grounds in State
ex rel. Payne v. Walden*, 156 W.Va. 60, 76, 190 S.E.2d 770,
779 (1972), the court sanctioned attachment in aid of
jurisdiction:

In an action at law on attachment against a
nonresident defendant, the suit does not abate
on the return day of the summons though the
record discloses that the defendant is not found
in the county, if it also appears that the said
defendant has property or debts in the county
and that the attachment has been levied there-
on.

When no personal jurisdiction is obtained over a non-
resident defendant, the attachment suit is in the nature
of a proceeding *quasi in rem* against the property within
the court's custody.[2] No personal judgment can be ren-
dered against a defendant who is not personally served
or who fails to make an appearance that confess person-
al jurisdiction. *Teachout v. Larry Sherman's Bakery,
Inc.*, ___ W.Va. ___, 216 S.E.2d 889 (1975); *Fretts, supra.*
Judgment and recovery in cases where jurisdiction is
obtained by attachment cannot exceed the value of the
property attached.[3]

---

[2] Quasi in rem actions may be divided into two types. The first
settles claims to the property on which jurisdiction is based, such
as actions to quiet title, or to partition land. The second seeks to
obtain a judgment on a claim unrelated to the property on which
judicial jurisdiction is based. *Restatement of Judgments* 5-9 (1942).

[3] Notwithstanding the right to attach the non-resident's property
as a means of acquiring quasi in rem jurisdiction, it is, of course,
still necessary to give the defendant notice of the preceeding under
due process principles. W.Va. Code § 38-7-30 requires the process

Having briefly reviewed these fundamental aspects of our law regarding attachment in aid of jurisdiction, we now must determine whether the remainder interest vested in Gibbs is the type of property that can be attached.

Since attachment is purely a product of statute in derogation of common law, we look to the West Virginia Code for guidance. The answer is found in W.Va. Code § 38-7-7, which provides that "[e]very attachment issued under ... this article may be levied upon any estate, real or personal, of the defendant named therein, or so much thereof as is sufficient to pay the amount for which it issues." The word "estate" has been used in the law in a variety of contexts. *See, Black's Law Dictionary* 643 (Rev. 4th Ed. 1968). Here it refers to the whole of the property owned by someone. Where a person has a present, fixed right of future enjoyment in a portion of a trust corpus, then such person's interest therein is beyond question an "estate" within the purview of the statute and is attachable hereunder.

---

commencing the proceeding to be served on the attachment debtor, such service to be made in any manner provided in W.Va. Code § 56-3-1 *et seq.* See, R.C.P. 4. W.Va. Code § 38-7-14, 17 provides for the service and return of the order of attachment, and W. Va. Code § 38-7-15 governs service of the attachment order on the garnishee. See, e.g., syl. pt. 1, *Atkins v. Evans,* 76 W. Va. 17, 84 S.E. 901 (1915).

One final comment about service of process commencing the action. In a recent law review, Clark & Landers, *Sniadach, Fuentes and Beyond: The Creditor Meets the Constitution,* 59 Va. L. Rev. 355 (1973), the authors suggest that, attachment in aid of jurisdiction should be permitted only when personal jurisdiction may not be obtained over the defendant either by personal service or by service under a state long-arm statute. Also, an attachment should not be allowed to continue if the defendant makes a general appearance and personal jurisdiction is obtained. This seems worth noting in light of the recent enactment by the Legislature of a "long-arm statute," W.Va. Code § 54-3-33 [1978], allowing for service of process upon nonresidents engaging in certain specified acts in this state by delivering a copy of the process to the Secretary of State. Although this section has yet to be interpreted, it would appear that by its use a plaintiff in this state could get personal jurisdiction over a nonresident defendant, making attachment as an aid to jurisdiction generally unnecessary.

The parties perceived and argued this point as one of statutory construction; that is, whether a vested remainder in a trust is an "estate" within the aforementioned statute. That is the only question we resolve today, for in numerous certified cases this Court has held that only questions that have been decided by the trial court and certified here may be ruled on by this Court. *See, e.g., Means v. Kidd,* 136 W.Va. 514, 67 S.E.2d 740 (1951).

Although we affirm the trial court's rulings, we have concluded that this case should be remanded to the trial court for consideration of whether attachment in aid of jurisdiction under W. Va. Code § 38-7-7 is permissible under the circumstances in this case in light of the United States Supreme Court's landmark constitutionally-based civil procedure pronouncement in *Shaffer v. Heitner,* 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed.2d 683 (1977); *See,* 80 W.Va. L. Rev. 285 (1978). This Court will not ordinarily reach constitutional issues neither raised in the trial court nor argued and briefed here. We thus remand, but in so doing we intimate no opinion on the question.

For the foregoing reasons, we affirm the trial court's denial of defendant's motion to dismiss and remand the case for further proceedings.

*Affirmed.*