498 S.E.2d 27

Carrie **ROBINSON**, an Infant Under the Age of Eighteen Who Sues by Her Mother and Next Friend, Shirley **HARGIS**, and Shirley Hargis and Paul Hargis, in Their Own Right, Appellants,

v.

**CABELL HUNTINGTON HOSPITAL, INC.**, Board of Trustees of Cabell Huntington Hospital, a Statutory Corporation, dba Cabell Huntington Hospital; and Leroy H. Merkle, Jr., Personal Representative of the Estate of Carmelo L. Terlizzi, Appellees.

No. 23963.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1997.

Decided Nov. 21, 1997.

Gerald L. Lacy, Charleston, for Appellants.

Barry M. Taylor, Jenkins, Fenstermaker, Krieger, Kayes & Agee, Huntington, for Cabell Huntington Hospital.

James M. Brown, Roslyn C. Payne, Brown & Levicoff, Beckley, for Merkle.

MAYNARD, Justice:

The appellants, Carrie Robinson, an infant at the time the underlying action was filed, and her natural parents, Shirley Hargis and Paul Hargis, appeal the April 4, 1996 order of the Circuit Court of Cabell County which dismissed the appellants' complaint against the appellee, Leroy H. Merkle, Jr., personal representative of the Estate of Dr. Carmelo L. Terlizzi, for lack of personal jurisdiction. The order also denied the appellants' motion to amend their complaint to join Dr. Terlizzi's insurance carrier as a party defendant or, in the alternative, to perfect service upon Dr. Terlizzi's estate by serving his insurance carrier. For the reasons that follow, we affirm the circuit court's order.

## I.

## FACTS

The essential facts are not in dispute, and we hereafter set forth those relevant to our discussion. On May 12, 1977, Shirley Hargis was admitted to Cabell Huntington Hospital for the delivery of her expected child. On that same day, Mrs. Hargis gave birth to Carrie Robinson who was delivered by Dr. Carmelo L. Terlizzi. At this time, Dr. Terlizzi was a resident of Huntington in Cabell County, and licensed by the State of West Virginia to practice medicine. Dr. Terlizzi maintained a liability insurance policy, on an occurrence basis, with Standard Fire Insur-

ance Company/Aetna Casualty and Surety Company.[1] Sometime after 1977, Dr. Terlizzi moved to Florida where he died in 1987.

Carrie Robinson suffered brain damage at birth. According to the appellants, in 1994 they discovered that there was reason to believe that the brain damage was the result of medical negligence by her health care providers in 1977. On October 24, 1994, the appellants commenced the underlying action in the Circuit Court of Cabell County against Leroy H. Merkle, Jr., the personal representative of the estate of Dr. Terlizzi, and the Cabell Huntington Hospital, Inc. In their complaint, the appellants alleged in part that "[a]s a result of the negligence of the Defendants, ... Carrie Robinson was injured during her birth or thereafter, and suffered hypoxia, sustained brain damage and was otherwise harmed and injured."

On August 11, 1995, the estate of Dr. Terlizzi moved the court to dismiss all claims made by the appellants against it based upon a lack of *in personam* jurisdiction of the courts of West Virginia over Dr. Terlizzi's Florida estate. Specifically, the court found that W.Va.Code § 56-3-33, West Virginia's long-arm statute, "by its very terms is not retroactive and the provisions are not available to a plaintiff in a cause of action arising from or growing out of any said acts or occurring prior to the effective date of that statute's enactment which was June 7, 1978[.]" The appellants subsequently filed a motion to amend their complaint to add Dr. Terlizzi's insurance carrier as a party defendant. In the alternative, the appellants attempted to perfect service on Dr. Terlizzi's estate by serving his insurance carrier.

By order of April 4, 1996, the court granted the appellee's motion to dismiss for lack of personal jurisdiction and denied the appellants' motion for leave to file an amended complaint or, in the alternative, to perfect service on Dr. Terlizzi's insurance carrier. That order is the subject of this appeal.

## II.

## DISCUSSION

■ Initially, we note that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995). With this in mind, we now review the issues before us.

The first issue raised by the appellants is whether the circuit court erred in granting the appellee's motion to dismiss for lack of jurisdiction. Essentially, the appellants assert that there exist sufficient minimum contacts between Dr. Terlizzi and this State so that the exercise of jurisdiction over his Florida estate does not violate traditional concepts of fair play and substantial justice as articulated by the Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In light of the fact that the cause of Carrie Robinson's brain damage was not discovered until 1994, the appellants contend that they should be allowed to utilize the long-arm statute in effect in 1994. Otherwise, they will be forever barred from pursuing their claim.

■ "The primary long-arm statute[2] is W.Va.Code, 56-3-33(a) [1984] which confers *in personam* jurisdiction on a nonresident[3] if the nonresident engages in one of the acts specified [in the statute]."[4] *Abbott v. Ow-*

---

1. A copy of the insurance policy was not made a part of the record submitted to this Court. In their brief, however, the appellants describe the policy as one that,

    > would provide insurance for any act of negligence which occurred in 1977 regardless of when the claim was asserted. This is in contrast to a claims-made policy whereby a malpractice insurance carrier agrees to provide protection during a period when a claim is actually filed regardless of the time of the alleged negligent act.

2. The second long-arm statute, W.Va.Code § 31-1-15 (1997), pertains only to corporations and is not relevant here.

3. W.Va.Code § 56-3-33(e)(2) defines "nonresident" in part as "any person, other than voluntary unincorporated associations, who is not a resident of this State or a resident who has moved from this State subsequent to engaging in such act or acts[.]"

4. These acts include:
    (1) Transacting any business in this State;

*ens–Corning Fiberglas Corp.*, 191 W.Va. 198, 207, 444 S.E.2d 285, 294 (1994) (footnotes added).

A court must use a two-step approach when analyzing whether personal jurisdiction exists over a foreign corporation or other nonresident. The first step involves determining whether the defendant's actions satisfy our personal jurisdiction statutes set forth in W.Va.Code, 31–1–15 [1984] and W.Va.Code, 56–3–33 [1984]. The second step involves determining whether the defendant's contacts with the forum state satisfy federal due process.

Syllabus Point 5, *Id.*

■■■ It is clear that the appellants have failed to satisfy the first step in the analysis above, in that Dr. Terlizzi's actions fail to satisfy the requirements of W.Va.Code § 56–3–33. According to the clear and unambiguous language of W.Va.Code § 56–3–33(g), the long-arm statute "shall not be retroactive and the provisions hereof shall not be available to a plaintiff in a cause of action arising from or growing out of any of said acts occurring prior to the effective date of this section [June 7, 1978]." We have previously said in Syllabus Point 1 of *VanKirk v. Young,* 180 W.Va. 18, 375 S.E.2d 196 (1988) (*quoting* Syllabus Point 5, *State of West Virginia v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353 (1959)) "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." The allegations set forth in the appellants' complaint concern acts or omissions that occurred on or about May 12, 1977. Thus, according to the express terms of the

statute, it is unavailable for use by the appellants for the purpose of obtaining personal jurisdiction over Dr. Terlizzi's personal estate. We find, therefore, that the circuit court did not err in dismissing the appellants' complaint for lack of personal jurisdiction.

Second, the appellants assert that the circuit court erred in denying their motion to amend their complaint to join Dr. Terlizzi's malpractice insurance carrier. It is the appellants' contention that the malpractice insurance policy issued by Standard Fire Insurance Company/Aetna Casualty and Surety Company on behalf of Dr. Terlizzi was written not only for the protection of Dr. Terlizzi, but also for the benefit of the injured patient. Therefore, the appellants contend they should be able to maintain a direct action against the insurance company as a third-party beneficiary. In support of this contention, the appellants cite *Hall v. Ocean Accident & Guarantee Corporation,* 122 W.Va. 188, 9 S.E.2d 45 (1940), as well as several cases from other jurisdictions which hold that liability policies exist for the protection of both the insured tortfeasor and the injured third party. *See Rivera v. Nevada Medical Liability Insurance Co.,* 107 Nev. 450, 814 P.2d 71 (1991); *St. Paul Fire and Marine Ins. Co. v. Asbury,* 149 Ariz. 565, 720 P.2d 540 (1986); *St. Paul Fire and Marine Ins. Co. v. Mitchell,* 164 Ga.App. 215, 296 S.E.2d 126 (1982).

■■■ We find, under the circumstances of this case, the appellants cannot bring a direct action against Dr. Terlizzi's liability insurer.

As a general rule, in the absence of policy or statutory provisions to the contrary, one who suffers injury which comes within the provisions of a liability insurance policy is

---

(2) Contracting to supply services or things in this State;

(3) Causing tortious injury by an act or omission in this State;

(4) Causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

(5) Causing injury in this State to any person by breach of warranty expressly or impliedly made in the sale of goods outside this State

when he might reasonably have expected such person to use, consume or be affected by the goods in this State: Provided, That he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

(6) Having an interest in, using or possessing real property in this State; or

(7) Contracting to insure any person, property or risk located within this State at the time of contracting.

not in privity of contract with the insurance company, and cannot reach the proceeds of the policy for the payment of his claim by an action directly against the insurance company.

46A C.J.S. *Insurance* § 1407 (1993).

In West Virginia, however, there are circumstances in which an injured plaintiff can bring a direct action against a liability insurer. In Syllabus Point 1 of *Broy v. Inland Mut. Ins. Co.*, 160 W.Va. 138, 233 S.E.2d 131 (1977) this Court stated "[i]f an insured with coverage under a liability insurance policy does not pay the underlying judgment entered in a personal injury action, the injured plaintiff may institute a direct action against the insurance company to recover the amount of the judgment up to the limits of the policy." Also, "[a]n injured plaintiff may bring a declaratory judgment action against the defendant's insurance carrier to determine if there is policy coverage before obtaining a judgment against the defendant in the personal injury action where the defendant's insurer has denied coverage." Syllabus Point 3, *Christian v. Sizemore*, 181 W.Va. 628, 383 S.E.2d 810 (1989). Finally, this Court has held that an action against an insurer for bad faith and unfair settlement practices can be joined in the same complaint as the underlying personal injury suit against the insured. *State ex rel. State Farm Fire v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (1994). It is clear, however, that none of these exceptions apply to the facts of the present case.

▬ We also find the appellants are not entitled to maintain a direct suit against Dr. Terlizzi's liability insurer as a third-party beneficiary of the insurance contract between Dr. Terlizzi and his insurance carrier. "An insurance policy and all rights arising from the policy are controlled by principles of contract, rather than property law." *Mazon v. Camden Fire Ins. Ass'n*, 182 W.Va. 532, 533, 389 S.E.2d 743, 744 (1990) (citation omit-

ted). "It is well-established that a contract of insurance is a personal contract between the insurer and the insured named in the policy." *Id.*, 182 W.Va. at 534, 389 S.E.2d at 745 (citations omitted). W.Va.Code § 55–8–12 (1923) states:

If a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise.

"[T]his Court has held that in order for a contract concerning a third party to give rise to an independent cause of action in the third party, it must have been made for the third party's sole benefit." *Woodford v. Glenville State College Hous. Corp.*, 159 W.Va. 442, 225 S.E.2d 671, 674 (1976) *citing Ison v. Daniel Crisp Corp.*, 146 W.Va. 786, 122 S.E.2d 553 (1961); *United Dispatch v. Albrecht Co.*, 135 W.Va. 34, 62 S.E.2d 289 (1950).[5] *See* W.Va. Code § 55–8–12 (1923). Further,

[i]n the absence of a provision in a contract specifically stating that such contract shall inure to the benefit of a third person, there is a presumption that the contracting parties did not so intend and in order to overcome such presumption the implication from the contract as a whole and the surrounding circumstances must be so strong as to be tantamount to an express declaration.

Syllabus Point 2, *Ison v. Daniel Crisp Corp.*, 146 W.Va. 786, 122 S.E.2d 553 (1961). As noted previously, this Court does not have a copy of the liability insurance policy as a part of the record in this case. However, the appellees' brief asserts "[t]here is no language within the body of the liability policy in question which would indicate that the benefits to be derived from such policy/con-

---

5. The Court in *Woodford* proceeded to explain, however, that "a majority of the Court today questions such a restrictive interpretation of the statute," and stated in Syllabus Point 2:

Where plaintiff seeks recovery as a third party beneficiary under a contract to which he is not a party under W.Va.Code, 55–8–12

[1923], it is necessary that plaintiff demonstrate that the contracting parties intended to confer a benefit upon the plaintiff by their contract.

We believe that the plain wording of the statute merits such a restrictive interpretation.

tract, shall inure to the benefit of a third-person not a party to the contract." This is not disputed by the appellants. The appellants have not demonstrated that the contracting parties here intended to confer a benefit upon them by their contract, much less that the contract was for their sole benefit.

As noted above, the appellants hinge their argument in favor of direct action against Dr. Terlizzi's insurer on this Court's statement in *Hall, supra*, as well as the determination of other courts, that "[t]he agreement of the insurer to pay lawful damages on behalf of the insured constituted a contract for the benefit of the person injured."[6] *Hall*, 122 W.Va. at 190, 9 S.E.2d at 46. In *Hall*, however, this Court upheld the plaintiff's right to proceed against the defendant's insurer only after a judgment was rendered against the defendant which he failed to satisfy. Moreover, in light of our law on third-party beneficiaries, we fail to see how the cases cited by the appellants are dispositive of the question before us. We find, therefore, that the appellants are precluded from bringing a direct action against Dr. Terlizzi's liability insurer.

▪ Last, the appellants contend the circuit court erred in denying their motion to perfect service on Dr. Terlizzi's estate by serving the summons and complaint on Dr. Terlizzi's liability insurer. Essentially, the appellants' argument here is bottomed on fairness. Specifically, the appellants aver that they should be permitted to perfect service of process on the estate of Dr. Terlizzi by serving his liability insurer. This argument is made in light of the nature of the malpractice insurance policy, which provides coverage for any act of negligence occurring

in 1977 regardless of when the claim was asserted. The appellants conclude, therefore, that the insurer is contractually obligated to pay for any negligent acts, and that to deny them a forum in which to litigate their claims "is not only a violation of due process but is inconsistent with public policy and equitable principles to decide and resolve disputes on the merits." The appellants cite no cases in support of their argument. In his response brief, the appellee treats this issue as one concerning *quasi in rem* jurisdiction.

We are aware of nothing in our law that would allow the appellants to perfect service of process on the personal representative of Dr. Terlizzi's estate by serving Dr. Terlizzi's malpractice liability insurer. According to Rule 4 of the West Virginia Rules of Civil Procedure (1997)[7], in relevant part, service of process shall be made upon an individual,

(A) by delivering a copy of the summons and of the complaint to him personally; or by delivering a copy of the summons and of the complaint at his dwelling house or usual place of abode to a member of his family above the age of sixteen (16) years and giving to such person information of the purport of the summons and complaint; or by delivering a copy of the summons and of the complaint to *an agent or attorney in fact authorized by appointment or statute to receive or accept service of process in his behalf*[.] (emphasis added).

The rule is clear that in order for Dr. Terlizzi's liability insurer to receive service on his behalf, or on behalf of the personal representative of his estate, the liability insurer must have been authorized to do so pursuant to a statute or by agreement.[8] There is no evidence of such an authorization in this case.

---

6. Many of the cases cited by the appellants concerned declaratory actions to determine whether and to what extent coverage was afforded by the insurance policies at issue. None involved the situation found here where the injured plaintiff asserted rights as a third-party beneficiary to an insurance policy where the insured could not be joined as a defendant.

7. Rule 4 of the West Virginia Rules of Civil Procedure was amended after the appellants attempted service of process on the personal representative of Dr. Terlizzi's Florida estate in 1994,

but the amendments did not affect the part of the rule applicable here.

8. Examples of statutory authorizations of agency for the purpose of service of process include W.Va.Code § 56-3-31 (1997) concerning "actions by or against nonresident operators of motor vehicles involved in highway accidents." According to W.Va.Code § 56-3-31(b),

[f]or purposes of service of process as provided in this section, every insurance company shall be deemed the agent or attorney-in-fact of every nonresident motorist insured by such

■ Also, we do not believe that the appellants can obtain *quasi in rem* jurisdiction under these facts.

A quasi-in-rem action is basically what the name implies—a halfway house between in rem and in personam jurisdiction. The action is not really against the property; rather it involves the assertion of a personal claim of the type usually advanced in an in personam action and the demand ordinarily is for a money judgment, although in some contexts the objective may be to determine rights in certain property. *The basis for transforming the suit from one in personam to an action against the defendant's property is the attachment or garnishment of some or all of the property he may have in the jurisdiction.* If the plaintiff eventually secures a judgment in a quasi-in-rem action, it will be satisfied to the extent possible out of the attached property.

4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1070, (1987) (emphasis added).

Further,

It often has been said that the property must be attached or garnished as a prerequisite to the exercise of jurisdiction. The apparent source of this requirement in the context of quasi-in-rem actions is *Pennoyer v. Neff* [95 U.S. 714, 24 L.Ed. 565 (1877)], in which the Supreme Court indicated that "seizure or some equivalent act" prior to judgment is necessary to endow a court with that type of jurisdiction.

*Id.*, (footnotes omitted).

In *Gee v. Gibbs,* 162 W.Va. 821, 824, 253 S.E.2d 140, 142 (1979), this Court stated that "a circuit court can obtain jurisdiction by attaching the property of a nonresident debtor located in the county," and discussed at length such attachment in aid of jurisdiction. The Court explained that,

[w]hen no personal jurisdiction is obtained over a nonresident defendant, the attachment suit is in the nature of a proceeding *quasi in rem* against the property within the court's custody. No personal judgment can be rendered against a defendant who is not personally served or who fails to make an appearance that confess personal jurisdiction. Judgment and recovery in cases where jurisdiction is obtained by attachment cannot exceed the value of the property attached.

*Gee,* 162 W.Va. at 826, 253 S.E.2d at 143 (citations omitted). In *Gee,* the Court concluded that a vested remainder interest in a trust, the situs of which is West Virginia, can be attached pursuant to W.Va.Code § 38–7–1 *et seq.* so as to confer *quasi in rem* jurisdiction in a circuit court.[9]

■ In the present case, however, a *quasi in rem* action would be against the alleged property interest found in the contract of insurance between Dr. Terlizzi and his liability insurer. We do not believe that such an interest can be attached so as to confer *quasi in rem* jurisdiction in a circuit court.[10] This Court has held that "[a] contingent liability, *ex contractu,* is not subject to an order of attachment and garnishment." Syllabus Point 4, *M.W. Kellogg Co. v. Concrete Accessories Corp.,* 157 W.Va. 763, 204 S.E.2d 61 (1974). In *Kellogg* the Court explained:

" 'A contingent debt, though arising out of contract, can not be garnisheed, as it would be unjust to the garnishee to render a judgment against him on a contract when the amount apparently due, according to the terms of the contract, may be extinguished by subsequent events . . .'

\*       \*       \*

---

company if the insured nonresident motorist is involved in any accident or collision in this state and service of process cannot be effected upon said nonresident through the office of the secretary of state. Upon receipt of process as hereinafter provided, the insurance company may, within thirty days, file an answer or other pleading or take any action allowed by law on behalf of the defendant.

**9.** W.Va.Code § 38–7–7 (1923) provides that "[e]very attachment issued under the provisions of this article may be levied upon any estate, real or personal, of the defendant named therein, or so much thereof as is sufficient to pay the amount for which it issues."

**10.** There is no indication in the record that the appellants herein sought to attach the liability insurance policy at issue.

"In order to attach a debt due in the future it must be a certain debt which will become payable upon the lapse of time and not a contingent liability, which may become a debt or not on the performance of some other acts or the happening of some uncertain event. Drake on Attachments and Garnishment, sec. 559."

*Kellogg,* 157 W.Va. at 770, 204 S.E.2d at 66 (*quoting Minotti v. Brune,* 94 W.Va. 181, 187–188, 118 S.E. 149, 151 (1923)).

The insurance policy at issue is uncertain and contingent since it may never become due and payable. Any duty of the liability insurer to defend Dr. Terlizzi's estate in an action for damages is contingent upon the institution of an action against his estate by proper service of process. Further, the duty to indemnify Dr. Terlizzi's estate is contingent upon a judgment rendered against it. Because the insurance policy is a contingent liability and not subject to attachment and garnishment, *quasi in rem* jurisdiction cannot be conferred in a circuit court.[11] *See Housley v. Anaconda Company,* 19 Utah 2d 124, 427 P.2d 390 (1967), *Belcher v. Government Emp. Ins. Co.,* 282 Md. 718, 387 A.2d 770 (1978). We hold, therefore, that any professional liability insurance policy which is a contingent liability is not subject to an order of attachment and garnishment, so that *quasi in rem* jurisdiction cannot be conferred on a circuit court.

In conclusion, we find that the express terms of the long-arm statute prevent the appellants from obtaining personal jurisdiction over Dr. Terlizzi's Florida estate. Also, the appellants are unable to maintain a direct action against Dr. Terlizzi's liability insurer under any exceptions to the general rule disallowing such actions, or as third-party beneficiaries of the insurance contract. Finally, the appellants cannot serve process on

Dr. Terlizzi's liability insurer in lieu of his estate because they have not demonstrated that the insurer has been authorized as an agent for that purpose, and *quasi in rem* jurisdiction over the insurance policy simply cannot be conferred on a circuit court under the facts of this case. For these reasons, we affirm the circuit court's order.

Affirmed.

11. In the appellee's brief, the appellants' reply brief, and in oral argument before the Court, the parties discussed the issue of *quasi in rem* jurisdiction in light of the Supreme Court decision of *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). In *Rush* the Supreme Court held that a State may not constitutionally exercise *quasi in rem* jurisdiction over a defendant who has no forum contacts by attaching the contractual obligation of an insurer licensed to do business in the State to defend and indemnify him in connection with the suit. According to the appellee, this holding forecloses the exercise of *quasi in rem* jurisdiction in this case. The appellants, on the other hand, assert that *Rush* is simply a restatement of *International Shoe, supra,* and that jurisdiction here satisfies the requirements of fair play, substantial justice and due process. We do not find the resolution of this question necessary in deciding the issue before us.