NIMMONS, Judge.
McCurry appeals from a final judgment in a nonjury case awarding Mr. and Mrs. Eppolito damages in their legal malpractice action against appellant. We affirm.
In December 1980, the Eppolitos engaged Broward Builders, Inc., as the general contractor to construct their new home. The contract price for the construction project was $356,275. Thereafter, difficulties began to develop with the general contractor and it became necessary for the general contractor to be terminated. Mr. Eppolito first consulted with McCurry regarding the termination of the general contractor on July 7, 1981. With the assistance of McCurry, the contractor was terminated on July 9, 1981.
Construction of the project recommenced at approximately the end of July. The cost of completion, when added to the amounts previously paid to Broward Builders — a total of $495,238 — was approximately $140,-000 more than the original contract price.
Both prior and subsequent to completion, various subcontractors of Broward Builders filed mechanics’ liens against the Eppo-litos’ residence because they had not been paid for work done in connection with the construction. All of such liens related to work done prior to the termination of the original contractor, Broward Builders.
As a result of failing to comply with the procedures of the Mechanics’ Lien Law surrounding recommencement, the appellees were subjected to mechanics’ lien claims in excess of $50,000. Appellees also necessarily expended in excess of $5,000 in legal fees to defend such actions.
It is the appellees’ position that their liability for the payment of the mechanics’ liens was the direct and proximate result of McCurry’s negligence in failing to comply with the procedures of the Mechanics’ Lien Law surrounding recommencement. Mr. Eppolito testified that he and his wife consulted McCurry for his representation on all items surrounding the termination of his general contractor and any future legal problems that the Eppolitos might encounter in dealing with their construction project. Thus, according to appellees, McCurry owed them a duty to comply with the Mechanics’ Lien Law requirements concerning recommencement and such a duty was breached.
McCurry, on the other hand, maintains that his employment was limited to the termination of the general contractor. He claims that because of the limited scope of *1112 his employment, he did not owe a duty to appellees to comply with the Mechanics’ Lien Law requirements.
We are satisfied that the evidence established a duty on the part of McCurry to see that the requirements of the Mechanics’ Lien Law regarding recommencement of construction were complied with and that McCurry did, in fact, breach such duty.
In order to understand the legal duty that was owed by McCurry in this case, it is necessary to review the provisions of Florida’s Mechanics’ Lien Law regarding recommencement of construction.
When a contractor has been terminated and the owner desires to complete the construction project, a specific procedure must be followed in accordance with the Mechanics’ Lien Law. Section 713.07(4), Florida Statutes (1981)[1] provides:
(4) If construction ceases before completion and the owner desires to recommence construction, he may pay all lien-ors in full or pro rata in accordance with s. 713.06(4) prior to recommencement in which event all liens for the recommenced construction shall take priority from such recommencement; or the owner may record an affidavit in the clerk’s office stating his intention to recommence construction and that all lienors giving notice have been paid in full except those listed therein as not having been so paid in which event 30 days after such recording, the rights of any person acquiring any interest, lien or encumbrance on said property or of any lienor on the recommenced construction shall be paramount to any lien on the prior construction unless such prior lienor records a claim of lien within said 30-day period. A copy of said affidavit shall be served on each lienor named therein. Before recommencing, the owner shall record and post a notice of commencement for the recommenced construction, as provided in s. 713.13.
This section sets out the specific procedure an owner must follow when the original construction ceases before completion, regardless of the cause, and the owner desires to complete the project. The procedure essentially involves two steps.
The first step gives the owner, in recommencing construction, the option of either
(a) paying all lienors in full or pro rata in accordance with the provisions of the statute, or
(b) recording an affidavit of intention to recommence construction stating that all lienors giving notice to him have been paid in full, except for those lienors listed in the affidavit.
The second step is for the owner, prior to recommencement, to record a new notice of commencement for the recommenced construction, pursuant to Section 713.13, Florida Statutes (1981). See Leiby, Florida Construction Law Manual § 7.05 (1981).
Furthermore, these documents must be filed before construction is actually recommenced, and not, as argued by the appel-lees, before payments are made under the resumed construction. This is evident from the language of Sections 713.07(4) and 713.13(l)(a), Florida Statutes. Section 713.07(4), as previously set forth, provides that “[i]f construction ceases before completion and the owner desires to recommence construction, he may pay all lienors ... prior to recommencement ..or the owner may record an affidavit in the clerk’s office stating his intention to recommence construction_ Before recommencing, the owner shall record and post a notice of commencement for the recommenced construction, as provided in s. 713.13.” (e.s.) Section 713.13(l)(a) provides:
(l)(a) An owner or his authorized agent before actually commencing to improve any real property, or recommencing completion of any improvement after default or abandonment, whether or not a project has a payment bond complying with s. 713.23, shall record a notice of commencement in the clerk’s office.... (e.s.)
The effect of an owner’s failure to file an affidavit of intention to recom- *1113 menee construction and a new notice of commencement is twofold. First, and relevant to our case, the owner loses his right to set-off the cost of completing the improvement from the amount of the initial contract price to defeat the claims of lien-ors arising from the original construction. See 2 Rakusin, Florida Mechanics’ Lien Manual, Ch. 14, p. 9 (1974); Tamarac Village, Inc. v. Bates & Daly Co., 348 So.2d 23 (Fla. 4th DCA 1977); MacIntyre v. Torres, 358 So.2d 101 (Fla. 3rd DCA 1978); and Melnick v. Reynolds Metals Co., 230 So.2d 490 (Fla. 4th DCA 1970).[2]
When the original construction ceases before completion, whether by abandonment by the contractor or the owner’s termination of the contractor, the owner can insure that payment of lien claims on the original work will not exceed the amount of the original contract price by filing the affidavit of intention to recommence construction and recording a new notice of commencement. When the owner complies with the provisions of Sections 713.07(4) and 713.13, he is entitled to set-off his cost of completing the improvement from the original contract price. 2 Rakusin, supra, Ch. 14, p. 4. The owner is permitted to subtract the cost of completing the project and proper payments made prior to termination from the amount of the contract price. This determines whether any funds remain available to satisfy the claims of unpaid lienors. If there are no monies available, the lienors cannot recover and the owner is not required to pay “twice” for the improvement. See Alton Towers Inc. v. Coplan Pipe & Supply Co., 262 So.2d 671 (Fla.1972).
When the owner carries out those duties prescribed in the Mechanics’ Lien Law, the owner’s liability for liens will not exceed the contract price. See Tamarac Village Inc. v. Bates & Daly Co., 348 So.2d 23, 25 (Fla. 4th DCA 1977); MacIntyre v. Torres, 358 So.2d 101 (Fla. 3rd DCA 1978); and Section 713.06(1), Florida Statutes. See also Leiby, supra, § 7.04; and 2 Rakusin, supra, Ch. 14, p. 4. Thus, as long as an owner carries out the procedures prescribed in the Mechanics’ Lien Law, he will avoid liability even where the lienors have followed the statutory procedure perfectly.
The second effect of the failure of the owner to file an affidavit of intention to recommence construction pertains to the priority of liens stemming from the original construction. In addition to providing an owner with a right to a set-off, Section 713.07(4) determines the priority of liens between those lienors who worked on the initial construction and those who performed on the recommenced work, as well as other subsequent encumbrancers. The statute allows the owner to speed the process by which priority of rights are determined by forcing lienors to file their claims of lien within 30 days after the owner records his affidavit in order to preserve their priority against other lienors or other encumbrancers.[3] The rights of the original lienors cannot be usurped by other encum-brancers or lienors working on the recommenced construction unless the original lienors fail to perfect their liens. Where the owner’s affidavit is not recorded, the 30-day “shortened” time for filing a claim of lien apparently does not apply. See generally 2 Rakusin, supra, Ch. 14, pp. 3, 4, and 18. In such an event, the general rule is first in time, first in right. The original lienor may then lose his priority if a lienor on the recommenced construction is able to file first.
None of the procedures set forth in Section 713.07(4) were complied with in the *1114 instant case. Had an affidavit and notice been recorded and served pursuant to Section 713.07(4), the appellees’ liability for the construction of their residence would have been limited to the balance of the contract price which remained unpaid after deducting the payments properly made to the original contractor and after deducting the payments which were reasonably necessary to complete the residence after the termination of the builder. Since there was no such balance after the completion of the residence, the recording and serving of the affidavit and notice would have provided the appellees with a complete defense to the liens.
Considering the facts of this case and the severe consequences of noncompliance with the Mechanics’ Lien Law, McCur-ry had an obligation to his clients to insure that an affidavit of intention to recommence construction and a new notice of commencement were filed, or at least to specifically advise his clients that such should be done. First, contrary to appellant’s assertions, the nature of the general contractor’s termination in this case establishes that the termination cannot be separated from the obligation to comply with the Mechanics’ Lien Law procedures surrounding recommencement. At the very first meeting between the appellant and appellees on July 7, 1981, as admitted by McCurry at trial, McCurry knew that substantial work still needed to be done on the construction project and that there would be a substantial cost overrun in order to complete the job. At the time of termination, $251,000 of the total of $356,275 contract price had been expended by the Eppolitos and the house had not yet been totally dried in. It should have been apparent to McCurry that construction had to be recommenced and that the Eppolitos would need to protect themselves from liability for lien claims which would exceed the original contract price.
Furthermore, under the series of events which transpired in this case, it is apparent that the scope of McCurry’s employment extended beyond the termination of the general contractor. Contrary to appellant’s assertions, his clients did not assume the obligation of satisfying the requirements of the Mechanics’ Lien Law. Rather, it is clear from the evidence that the Eppolitos relied on McCurry to handle the lien aspects of their case and McCurry should have at least been aware of such reliance. The second conference between the parties was held on July 8, 1981. At that conference, the parties discussed liens and various notices to owner filed prior to termination of the contractor, and outstanding potential lien claimants. Almost immediately upon the termination of the general contractor on July 9, 1981, materi-almen and subcontractors began to file their claims of lien. During the months of July and August, appellees received eight claims of lien totalling approximately $60,-000. Mr. Eppolito testified that each time he received a claim of lien, he would send it to McCurry. At trial, McCurry acknowledged receipt of these claims of lien. Moreover, McCurry admitted in his testimony at trial that he had some responsibility for handling the legal aspects of the lien claims that were coming in. During the month of July, McCurry had several phone conversations with the attorneys for the various lien claimants. In fact, McCurry admitted that part of his July and August billings to the clients were attributable to lien work, and that only $950 of his $5000 total bill related to nonlien matters. Also, McCurry represented the appellees on their lien claims for at least one year after the termination of the contractor. The above facts clearly indicate that McCurry’s employment did extend to lien matters associated with the termination of the original contractor.
In his defense, McCurry testified that he assumed Mr. Eppolito was going to adhere to the Mechanics’ Lien Law procedures and file the required documents. Yet such an assumption by McCurry was unwarranted under the facts of this case. There was never an agreement by the parties that Mr. Eppolito would undertake such a task. Further, notwithstanding the gravity of non-compliance in this case, McCurry testified that he never inquired or checked into *1115 whether Mr. Eppolito had complied with the statute.
Moreover, although McCurry claims that he made the above assumption, he never informed the lien claimants or their attorneys that the Eppolitos were protected from such lien claims by his clients' having complied with the Mechanics’ Lien Law by the filing of the required documents, and he never told his clients not to worry about the lien claims. Instead, McCurry continued to defend the lien claims on other grounds and encouraged Mr. Eppolito to negotiate with the subcontractors and to try to obtain releases from their claims of lien.
McCurry never informed the Eppolitos that they could be spared the necessity of trying to obtain releases if the requirements of the Mechanics’ Lien Law had been complied with. The following is an excerpt of McCurry’s testimony:
Q * * * What I don’t understand is what point was there in advising him to go out and negotiate with all these lien claimants and advising him to go out and get releases of lien from all these lien claimants and in giving him a form of release and in defending against all these lien claimants if the simple act of filing those two pieces of paper had cut all those people off.
A Mr. Eppolito indicated that he had been dealing with these various subcontractors and suppliers for several months and he felt like he could work out a settlement with them and I just gave him the means in which to accomplish it.
Q Did you tell him he could be spared the necessity for all of that if he complied with the recommencement procedure?
A No, sir.
McCurry should have at least adequately advised the Eppolitos as to the documents to be filed in order to protect their interests, the procedure for such filing and the consequences of the failure to file. However, McCurry failed to do so. The extent of the advice given by McCurry at the parties’ second meeting is set forth in appellant’s testimony at trial:
I went through the general procedure on the mechanic’s lien law as it related to an owner and then, of course, got into this question of once the lien claimants were known and the amounts that either he had to get those releases, an affidavit signed or he had to follow the procedures set out in the mechanic’s lien law for recommencement which I advised him he could do or I could do or perhaps his architect or contractor could do, but it had to. be .followed specifically.
Under the circumstances of this case, the above advice failed to adequately inform the client of his rights and obligations under the Mechanics’ Lien Law and of the consequences of noncompliance with such law. McCurry testified that he did provide Mr. Eppolito with a copy of the Mechanics' Lien Law. Yet the copy contained no highlights or interpretative language. Moreover, the notice of recommencement and affidavit requirements of Section 713.07(4) are tucked away within a section of the law bearing the caption “Priority of Liens.” Considering the technically arcane nature of the Mechanics’ Lien Law,[4] McCurry was not justified in believing that the furnishing of his clients with a copy of Chapter 713 would provide reasonable assurance that they would do that which was necessary to provide the protections afforded by that Chapter.[5]
*1116 In the final judgment, the trial court, while recognizing that attorneys are not obligated to perform services which the client has undertaken, nevertheless expressly stated its concurrence with the expert testimony presented on behalf of the appellees. That testimony essentially was that an attorney who undertakes the kind of lawyer-client relationship as existed in the case at bar owes a duty to the client to assure that the client is at least specifically advised of the procedures to be followed in order to protect the interests of the client under the Mechanics’ Lien Law. There is competent substantial evidence to support the finding that appellant — although, as recognized by the trial court, an able and well qualified attorney — failed in this instance to measure up to the applicable minimum standard for attorneys practicing in this field.
AFFIRMED.
JOANOS and THOMPSON, JJ., concur.

. All references in this opinion to Florida Statutes will be to the 1981 version.

. The owner’s right to set-off the cost of completion may arguably not apply where the owner has caused the cessation of construction either by unjustifiably terminating the contractor or by breaching the contract so that the contractor was justified in walking off the job. 2 Rakusin, supra, Ch. 14, p. 16. However, such a situation does not exist in the instant case because both parties agree that the owner was justified in terminating the contractor.

. It appears that in the event an affidavit is not filed by the owner, a lienor may still file his lien within 90 days after the date the contractor is terminated or the date when the lienor last furnished materials, labor or services to the improvement, whichever shall occur first, in order to preserve his lien against the owner. Section 713.08(5), Florida Statutes.

. Judge Letts has accurately described the Mechanics’ Lien Law thusly:
There can be no more confusing statute in Florida than the one on liens under Chapter 713. The frequent impracticality of its application in the field, coupled with ill conceived, confusing, patchwork amendments, all topped off by conflicting appellate decisions, have all combined to make life miserable for judges, lawyers, legislators and the vitally affected construction and lending industries.
American Fire & Casualty Co. v. Davis Water & Waste Industries, Inc., 358 So.2d 225 (Fla. 4th DCA 1978).

. The little advice McCurry did provide was partially incorrect as a matter of law. As indicated by McCurry’s testimony at trial, the advice given to his clients was based on his opinion that the filing of the affidavit was a prerequisite to the recording of a new notice of commencement. According to the advice he gave his clients, if appellees had obtained releases on all *1116 of their claims of lien, the recording of a new notice of commencement would not be necessary. To the contrary, however, the Mechanics’ Lien Law clearly requires that a new notice of commencement be recorded before eonstruction is recommenced regardless of whether a release is obtained or an affidavit is filed. See Sections 713.07(4) and 713.13(l)(a), Florida Statutes.