737 So.2d 540 (1999)
Leroy H. MERKLE, Jr., etc., Petitioner,
v.
Carrie H. ROBINSON, etc., Respondent.
No. 91,967.
Supreme Court of Florida.
July 8, 1999.
Marie A. Borland of Hill, Ward & Henderson, P.A., Tampa, Florida, for Petitioner.
Roy L. Glass, St. Petersburg, Florida, for Respondent.
PER CURIAM.
We have for review a decision asking the following certified question of great public importance:
DOES THE SIGNIFICANT RELATIONSHIP TEST ADOPTED IN BATES V. COOK, 509 So.2d 1112 (Fla. 1987), FOR USE IN APPLYING FLORIDA'S BORROWING STATUTE, SECTION 95.10, FLORIDA STATUTES, ALSO APPLY TO CASES INVOLVING FLORIDA'S STATUTE OF LIMITATIONS, SECTION 95.11, FLORIDA STATUTES?
Robinson v. Merkle, 700 So.2d 723, 726 (Fla. 2d DCA 1997). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We rephrase the question to read as follows:
DOES THE SIGNIFICANT RELATIONSHIP TEST ADOPTED IN BATES V. COOK, 509 So.2d 1112 (Fla. 1987), FOR USE IN APPLYING FLORIDA'S BORROWING STATUTE, SECTION 95.10, FLORIDA STATUTES, ALSO APPLY TO CASES WHERE THE CLAIM IS TIME-BARRED UNDER FLORIDA'S STATUTE OF LIMITATIONS, SECTION 95.11, FLORIDA STATUTES?
We answer the rephrased question in the affirmative.
*541 The facts established below are as follows:
Robinson, a West Virginia resident, filed suit in Pinellas County, Florida, against the estate of Dr. Carmelo Terlizzi to recover damages for injuries allegedly caused by Dr. Terlizzi's medical negligence during her delivery and birth on May 12, 1977.[[1]] On May 12, 1977, Shirley Hargis [Robinson's mother] was admitted to Cabell Huntington Hospital, in Cabell County, West Virginia, under the care of Dr. Terlizzi. Mrs. Hargis was provided pre-natal obstetrical care by Dr. Terlizzi prior to this hospital admission. It is alleged that Robinson was born with perinatal asphyxia, hypoxia, and a seizure disorder as a result of Dr. Terlizzi's medical negligence. Dr. Terlizzi practiced medicine in West Virginia but retired to Florida, where he died in 1987.
Robinson argues the West Virginia statute of limitations applies to this action because the negligent conduct which gave rise to the cause of action occurred in West Virginia and because the parties were West Virginia residents at the time of the occurrence.[[2]] We agree but note that our decision conflicts with a decision from the Third District on the same issue. See Rodriguez v. Pacific Scientific Co., 536 So.2d 270 (Fla. 3d DCA 1988), review denied, 545 So.2d 1368 (1989).
Robinson alleges, and it is not disputed, that her cause of action for medical malpractice is not barred under the West Virginia statute of limitations. She argues that section 55-2-15, West Virginia Code (1995),[[3]] a general tolling provision which tolls the statute of limitations on infants' claims while they are minors, makes her claim viable under West Virginia law. Robinson further argues that this limitations provision governs the action rather than the limitations period imposed by section 95.11, Florida Statutes (1993).[[4]] Thus, the question to be settled here is whether Florida's statute of limitations was properly applied to a tort action which arose in West Virginia and which is not barred by that state's statute of limitations.
Robinson, 700 So.2d at 724. The district court held that "Florida's statute of limitations should not be used to bar a cause of action which arose in another state or territory when that state or territory has the more significant relationship to the cause of action, and the action is not barred in the foreign state." Id. at 725. The district court then applied its holding to the instant case where *542 the parties lived in West Virginia at the time of the injury, the injury occurred in West Virginia, the doctor-patient relationship began and ended in West Virginia, and the contract of insurance was entered into in West Virginia. The relationship of Florida to this action is limited to the fact that Dr. Terlizzi, some ten years after this injury, changed his residence to Florida. Under the significant relationship test, West Virginia has more interest in this cause of action; therefore, its statute of limitations should apply.
Id. at 725-26. We agree.
This Court has held that in tort actions involving more than one state, all substantive issues should be determined in accordance with the law of the state having the most "significant relationship" to the occurrence and parties. See Bishop v. Florida Specialty Paint Co., 389 So.2d 999, 1001 (Fla.1980). The "significant relationship" test has been applied by this Court to questions involving conflict of law issues regarding statutes of limitation affected by the borrowing statute.[5]See Bates v. Cook, Inc., 509 So.2d 1112, 1114-15 (Fla.1987) (holding that "just as in the case of other issues of substantive law, the significant relationships test should be used to decide conflicts of law questions concerning the statute of limitations" where the borrowing statute applies).
In the present case, this Court holds that the "significant relationship" test should be applied to Florida's statute of limitations.[6] Traditionally, Florida courts would apply Florida's statute of limitations to bar a claim that arose in a foreign jurisdiction if Florida's limitation period was shorter. See Brown v. Case, 80 Fla. 703, 86 So. 684 (1920). The justification given for applying the limitations period of the forum rather than the jurisdiction where the cause arose is that statutes of limitation are procedural in nature and not substantive; thus, the forum's limits should apply even though the substantive law giving rise to the action may be from a foreign jurisdiction. See Bates, 509 So.2d at 1114. The distinction between "procedural" versus "substantive," however, has been "universally assailed" because a "right which can be enforced no longer by an action at law is shorn of its most valuable attribute." Id. (quoting Comment, The Statute of Limitations and the Conflict of Laws, 28 Yale L.J. 492, 496 (1919)). Thus, the rejection of that distinction results in treating statute of limitation choice of law questions the same as "substantive" choice of law questions which, as stated above, Florida decides pursuant to the *543 "significant relationship" test. See Bishop, 389 So.2d at 1001.
The fear that the "significant relationship" test would expose Florida courts to unnecessary litigation that would detrimentally tax our court system is unpersuasive. Application of the "significant relationship" test to statute of limitation choice of law questions should not greatly increase the work load of Florida courts. To discern the impact of this change out of all the cases considered by Florida courts, we would first narrow the number of cases to those that present a choice of law question; we would narrow that group to cases that present a statute of limitations choice of law question; and then we would further narrow the latter group to cases where our reliance on the "significant relationship" would allow the case to proceed in Florida that would have been barred under the traditional test. Thus, the limited class of cases that Florida would entertain is where the case arose outside of Florida, Florida's statute of limitation is shorter than the foreign jurisdiction's, and the foreign jurisdiction is found to have the most significant relationship to the litigation. This does not amount to an opening of "flood gates." To the extent Florida courts will entertain some additional cases, we find that this expense is counterbalanced by this Court's policy of providing litigants with a forum to seek redress for wrongs that have been suffered for which relief is provided by law.
We see no reason to refrain from employing the "significant relationship" test to conflict of law issues concerning limitation periods generally, thereby treating conflicts of law pertaining to section 95.11 consistently with conflicts concerning substantive law and with conflicting limitations periods affected by the borrowing statute. We therefore agree with the opinion below and likewise "read the language in Bates to be applicable to any conflict of law question concerning a statute of limitation, including section 95.11, Florida Statutes (1993)." Robinson, 700 So.2d at 725.
Accordingly, we answer the rephrased certified question in the affirmative, approve the decision below, and disapprove Rodriguez v. Pacific Scientific Co., 536 So.2d 270 (Fla. 3d DCA 1988).
It is so ordered.
SHAW, ANSTEAD and PARIENTE, JJ., and KOGAN, Senior Justice, concur.
HARDING, C.J., concurs in result only with an opinion.
WELLS, J., dissents with an opinion, in which OVERTON, Senior Justice, concurs.
OVERTON, Senior Justice, dissents with an opinion.
HARDING, C.J., concurring in result only.
While I agree with the majority that West Virginia's general tolling provision of its statute of limitations[7] should apply to Carrie Hargis Robinson's negligence action against the estate of Dr. Terlizzi, I do not agree with the reasoning behind the majority's decision. I believe that this Court should apply the 1988 revision of the Restatement (Second) of Conflicts of Laws section 142[8] and find that the instant case *544 falls within the "exceptional circumstances" envisioned by section 142.[9]
This Court has consistently followed the Restatement in addressing conflict of law issues. See, e.g., Bates v. Cook, 509 So.2d 1112 (Fla.1987) (citing to 1986 revision of Restatement section 142 in holding that significant relationships test should be used to decide conflicts of law questions concerning the statute of limitations); Hertz Corp. v. Piccolo, 453 So.2d 12 (Fla. 1984) (adopting Restatement (Second) of Conflict of Laws section 125 (1971) as correct statement of the law regarding what law controls who are necessary and proper parties to a proceeding); Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980) (adopting the "significant relationships test" as set forth in the 1971 version of the Restatement sections 145 and 146).
Section 142, regarding the statute of limitations, was revised in 1988 after a five-year endeavor by the American Law Institute to update the Restatement. As explained in the foreword to the revised Restatement, section 142 received consideration at the 1986, 1987, and 1988 annual meetings of the American Law Institute. "The approval of [section] 142 in 1988 concluded extensive deliberations about the statute of limitations, a problem that is of both great practical importance and no little conceptual difficulty." Restatement (Second) of Conflict of Laws foreword (Supp.1989). In fact, revised section 142 represents the emerging trend to apply the same choice of law analysis to limitations issues as that employed with substantive law questions. Id. cmt. e; see also Discussion of the Restatement of the Law, Second, Conflict of Laws, 65 A.L.I. Proc. 320, 322 (1988)(comments of Willis L.M. Reese) ("We think that the statute of limitations should be dealt with in much the same way as any other choice of law problem, and that we should no longer be bound by the notion that it is procedural.").
Revised section 142 was designed to replace original sections 142 and 143[10] and "takes the position that the statute of limitations should not be treated as procedural for choice of law purposes." Restatement (Second) of Conflict of Laws § 142 reporter's note (Supp.1989). Revised section 142(1) provides that the forum will apply its own statute of limitations barring the claim. Revised section 142(2) provides that the forum will apply its own statute of limitations permitting the claim, unless (a) maintaining the claim would serve no substantial interest of the forum and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence. Thus, revised section 142 distinguishes between situations where the statute of limitations of the forum state bars the action and those in which the action is permitted. Under ordinary circumstances, a forum will apply its own statute of limitations barring a claim. However, a forum may decline to apply its own statute of limitations where the "exceptional circumstances of the case make such a result unreasonable." Restatement (Second) of Conflict of Laws § 142 (Supp. 1989). As the accompanying commentary explains, when the forum believes that dismissal would be unjust under the special circumstances of the case, it may "entertain a claim that is barred by its own statute of limitations but not by that of some other state." Id. cmt. f. One of the examples cited in the commentary is the exact situation presented in the instant *545 case, namely "when through no fault of the plaintiff an alternative forum is not available... [because] jurisdiction could not be obtained over the defendant in any state other than that of the forum." Id. In this case, Dr. Terlizzi died in Florida in 1987, the possible medical negligence was not discovered until 1994, and personal jurisdiction over Terlizzi's estate could only be obtained in Florida.[11] Thus, under these exceptional circumstances, I believe that Robinson's claim can be entertained in Florida.
Finally, I would answer the rephrased certified question in the negative. I read revised section 142 as only applying the significant relationship test when the claim is not time-barred by the forum's statute of limitations. See Restatement (Second) Conflict of Laws § 142(2) (Supp.1989). "[O]nly in the exceptional case ... will [the forum] entertain a claim that is barred by its own statute of limitations." Id. cmt. f.
WELLS, J., dissenting.
I dissent as to the answering of the revised certified question in the affirmative and to affirming the district court's reversal of the trial court's dismissal of the action.
It is my view that the majority and the district court misread Bates v. Cook, 509 So.2d 1112, 1114-15 (Fla.1987), and reach a conclusion which is contrary to the longstanding precedent of this Court, contrary to the Restatement (Second) of Conflicts of Laws, section 142 (Supp.1989), and which renders meaningless section 95.10, Florida Statutes (1997). In Bates, the issue which was before the Court was the applicability of the borrowing statute, which is section 95.10. In order to determine whether the borrowing statute applied, it was necessary to make a preliminary determination as to in which state the cause of action arose. Only when it was known in which state the action arose could it be determined whether the State's cause of action was longer or shorter than Florida's statute of limitations governing that action. This is made clear in the last paragraph of Bates:
We simply hold that the significant relationships test should be employed to decide in which state the cause of action "arose." The borrowing statute will only come into play if it is determined that the cause of action arose in another state.
By its express language, the borrowing statute only applies at all to instances in which the cause of action in the state in which the action arose is shorter than the Florida statute of limitations.[12] The borrowing statute plainly has nothing to do with cases, such as this case, in which the statute of limitations in the State in which the action arose is claimed to be longer than Florida's. Nor does Bates in any way cover this situation.
However, Bates certainly indicates that in this situation, in which Florida is the state in which the action is filed and the statute of limitations in the jurisdiction in which the claim arose is claimed to be longer than Florida's, Florida will adhere to its long-standing rule that it will apply its own statute of limitations. First, Bates says, "The position taken by the American Law Institute is particularly pertinent to our consideration...." 509 So.2d at 1114. Bates then quotes the following from Restatement (Second) of Conflict of Laws, section 142 (1986):

An action will be maintained if it is not barred, by the statute of limitations of the forum unless the action would be barred in some other state which, with respect to the issue of limitations, has a *546 more significant relationship to the parties and the occurrence.
Bates, 509 So.2d at 1114 (emphasis added). The obvious meaning of this provision of the Restatement is that if the action is barred by the statute of limitations of the state in which the action is filed, that ends the inquiry. The action cannot proceed in that forum. Since the present action was barred by the Florida statute, section 95.11, that should end the inquiry in this case because the action cannot proceed in Florida according to this provision of the Restatement, which this Court cited and held to be pertinent in Bates.
In Bates, this Court also cited to an article written by Willis L.M. Reese, a reporter for the American Law Institute, in the development of section 142. The article is titled The Second Restatement of Conflict of Laws Revisited, 34 Mercer L.Rev. 501 (1983). In that article, Mr. Reese wrote in pertinent part to this case:
The rules dealing with statutes of limitations still represent the law in the majority of states but are contrary to the emerging trend. These rules provide that the forum statute of limitations will be applied irrespective of whether it is longer or shorter than that of the state of the otherwise applicable law except when the "action ... is barred in the state of the otherwise applicable law by a statute of limitations which bars the right and not merely the remedy." Much can be said in support of the rule that the forum should apply its own statute of limitations when this provides for a shorter period than that of the state of the otherwise applicable law. ...
. . . .

The rule that a court will apply its own shorter statute of limitations remains good law. The clearly emerging trend, however, is contrary to the rule that the forum will apply its longer statute of limitations simply on the ground that it is the forum, except in situations in which the statute of the state of the otherwise applicable law bars the right and not merely the remedy.
Id. at 505-06 (citations omitted; emphasis added). Bates also cites to Reese's comments reported in the article, Annual Meeting of the American Law Institute, at 54 U.S.L.W. 2593, 2597 (May 27, 1986). These comments were reported as follows:
Reporter Willis L.M. Reese, of Columbia University Law School, began the discussion with the draft statute of limitations provision, § 142, which provides: "An action will be maintained if it is not barred by the statute of limitations of the forum unless the action would be barred in some other state which, with respect to the issue of limitations, has a more significant relationship to the parties and the occurrence." The issue of what statute of limitations applies should be determined like any other choice of law issue, Reese told the group.
It is readily apparent that what Reese was referring to concerning the "choice of law" was the determination as to where the cause of action arose so that it could be then determined whether the statute of limitations in the state in which the cause of action arose was "shorter" than the statute of limitations in the forum state. Thus, a proper reading of Bates is that it does not recede from the long-decided Florida precedent which applied Florida's statute of limitations to causes of action filed in Florida courts when the Florida statute of limitations is the same or shorter than the statute of limitations in the state in which the claim arose.
While Bates is critical of the procedural versus substantive analysis in respect to statutes of limitations, Bates does not recede from the statement in this Court's decision in Colhoun v. Greyhound Lines, Inc., 265 So.2d 18 (Fla.1972), which states that "[b]ecause Florida is the forum in this case, the appropriate statute of limitations will be found in Chapter 95, Florida Statutes." Id. at 20. Nor does Bates recede from Brown v. Case, 80 Fla. 703, 86 So. *547 684 (1920), which directly held that the Florida statutes of limitations apply to actions brought in Florida courts. In Brown, this Court pointed out that this has been the law of Florida since Perry v. Lewis, 6 Fla. 555 (1856). Surely, if the Bates court intended to cast aside precedent which has stood in Florida for over 130 years, it would have done so expressly.
The other district courts which have addressed this issue read Bates as adhering to the Restatement (Second) of Conflict of Laws, section 142. Both Rodriguez v. Pacific Scientific Co., 536 So.2d 270 (Fla. 3d DCA 1988), and Sullivan v. Fulton County Adm'r, 662 So.2d 706 (Fla. 4th DCA 1995), approved, 22 Fla. L. Weekly S578, ___ So.2d ___, 1997 WL 589312 (Fla. Sept. 25, 1997), motion for rehearing filed, No. 87,110 (Fla. Oct. 6, 1997), point to section 142 as requiring the application of Florida's statute of limitations in situations in which Florida's statute of limitations barred the actions filed in Florida.
The majority's decision is not only in conflict with the Restatement (Second) Conflict of Laws, section 142, and the longstanding precedent of this state, it is in conflict with the majority of other jurisdictions, as stated in 51 American Jurisprudence 2d Limitations of Actions, § 66, at 645-46 (1970):
Under this rule, and in the absence of a statute of the forum allowing the setting up of a bar accruing elsewhere, the statute of limitations of the forum is a bar to a common law remedy even though the action is not barred in the state where it arose. ...
(Emphasis added.) When Bates refers to a "trend away" from a rule citing to Mr. Reese, it is clearly not this rule which is being referenced. Rather, as stated in the article by Mr. Reese, he stated that the "trend away" was from the rule that the forum will apply its longer statute of limitations, which does not bar the action, on the ground that it is the forum in instances in which the action would be barred where it arose. Again, in respect to this rule, Mr. Reese's comment in the article referenced in Bates was, "The rule that a court will apply its own shorter statute of limitations remains good law."
Moreover, the majority decision renders section 95.10 meaningless. It is patent that the reason that section 95.10 exists is to alter the long-standing precedent from this Court that the Florida statute of limitations applies to actions brought in Florida. As noted, the statute alters this rule only if the statute in the place where the action arose bars the action. If Florida's common law was that it would simply look to the place where the action arose and apply that place's statute of limitations to an action filed in Florida, then section 95.10 would be completely unnecessary.
A significant policy reason in favor of Florida's long-standing rule is to prohibit forum shopping, which the majority's new rule will now permit. This is contrary to this Court's recent decision to curb such practices in Kinney System, Inc. v. Continental Insurance Co., 674 So.2d 86, 89-90 (Fla.1996):
However, the private interests of individuals are not the only concerns to factor into the equation. There also are public interests that we, like the United States Supreme Court, must address. While Florida courts sometimes may properly concern themselves with a suit essentially arising out-of-state, they nevertheless must take into account the impact such practices will have if not properly policed-an impact with substantial effect on the taxpayers of this state and on the appropriation of public monies at both the state and local level to pay for the costs of judicial operations.
We must rightly question expenditures of this type where the underlying lawsuit has no genuine connection to the state. Florida's judicial interests are at their zenith, and the expenditure of tax-funded judicial resources most clearly justified, when the issues involve matters with a strong nexus to Florida's *548 interests. But that interest and justification wane to the degree such a nexis is lacking. This is a concern also addressed by the Gilbert rule in its listing of the "factors of public interest" that should weigh in the equation:
Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.
[Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).]
The argument has been advanced that Kinney provides a reason why the statute of limitations forum rule should be changed, as the majority here changes it, since Kinney permits cases to be dismissed on the basis of forum non conveniens. A reason that this case is not being pursued in West Virginia is that West Virginia has made a policy decision not to allow service of process by a long-arm statute. The majority's decision effectively undermines this policy decision. I do not believe this is a proper function of our courts.
In sum, I find there to be no sound reason to recede from a rule which has been consistently applied in Florida for 153 years. Therefore, I would quash the district court's decision and reinstate the dismissal of the action.
OVERTON, Senior Justice, concurs.
OVERTON, Senior Justice, dissenting.
I dissent.
The majority opinion makes no legal or logical sense. First, Florida's only relationship with the incident is that the offending physician, Dr. Carmello Terlizzi, retired to Florida ten years after the alleged medical injury occurred.
Second, the reason for the suit in Florida against the deceased doctor's estate is that the long-arm statute of West Virginia, expressly by its terms, prohibits its application to causes of action which occurred on the date of this injury, and the Supreme Court of West Virginia has expressly ruled in this case that the law suit cannot proceed in that state.
Third, if this case had arisen in Florida, the bringing of this action would have been prohibited by our statutes. We are apparently advertising to counsel in other jurisdictions that it is open season on Florida retirees.
To emphasize my point, it is important to restate and expand on the factual circumstances of this case. The record reflects that on May 12, 1977, Shirley Hargis gave birth to her daughter, Carrie Hargis Robinson, at the Cabell Huntington Hospital in West Virginia. The delivery was performed by Hargis's obstetrician, Dr. Carmello Terlizzi. Robinson was born with perinatal asphyxia, hypoxia, and a seizure disorder. Dr. Terlizzi subsequently retired to Florida, where he died in 1987. Approximately seventeen years after her daughter's birth and seven years after Dr. Terlizzi died, Hargis discovered that her daughter's injuries could have been the result of medical negligence by her health care providers at the time of birth in 1977. As a result, on October 24, 1994, a medical malpractice action was filed in West Virginia against the personal representative of Dr. Terlizzi's Florida estate *549 and the Cabell Huntington Hospital, Inc. The estate moved to dismiss the complaint for lack of personal jurisdiction under West Virginia's long-arm statute, section 56-3-33, West Virginia Code (1984). The West Virginia long-arm statute provides that it "shall not be retroactive and the provisions hereof shall not be available to a plaintiff in a cause of action arising from or growing out of any of said acts occurring prior to the effective date of this section." (Emphasis added.) The effective date was June 7, 1978, meaning the prohibition of a retroactive application applied to this case. On April 4, 1996, the trial court granted the estate's motion to dismiss. The Supreme Court of West Virginia affirmed the trial court's order, holding that the expressed terms of the long-arm statute made that statute unavailable for the purpose of gaining personal jurisdiction over Dr. Terlizzi's Florida estate. Robinson v. Cabell Huntington Hosp., Inc., 201 W.Va. 455, 498 S.E.2d 27, 30 (1997).
Hargis also filed a complaint on October 25, 1994, for medical negligence against the estate in Pinellas County, Florida. The estate moved to dismiss, arguing that the claim was time-barred under Florida's seven-year medical malpractice statute of repose, section 95.11(4)(b), Florida Statutes (1995). The plaintiff defended by asserting the claim was viable under West Virginia's statute which tolls the statute of limitations for a maximum of twenty years. The trial court granted the motion to dismiss, finding Florida's statute of repose applied to the cause of action and dismissed the complaint.
In this case, the State of West Virginia, through its trial court and its Supreme Court, has held that this cause of action cannot now be maintained in West Virginia. What the majority is saying is that this same cause of action can be maintained in Florida using West Virginia law, although West Virginia law does not allow this action to proceed in that jurisdiction. It is only logical that under those circumstances the only way this action could proceed is through applicable Florida law, and our Florida law as acknowledged by all the parties would prohibit this cause of action because of our statute of repose. As noted, the parties lived in West Virginia at the time of injury, the injury occurred in West Virginia, the doctor-patient relationship began and ended in West Virginia, and the contract of insurance was entered into in West Virginia. The only relationship with Florida to this cause of action is limited to the fact that the physician, ten years after the injury, retired to Florida. Florida and its courts have no responsibility to this incident whatever, particularly under circumstances where the expressed statutes of West Virginia prohibit this cause of action in that state and those statutory provisions have been upheld by that state in a proceeding involving these same parties. It is clear to me that the judgment of the trial court should be affirmed.
NOTES
[1] The trial court dismissed appellant's complaint as barred by section 95.11, Florida Statutes (1993).
[2] "Robinson filed suit against Dr. Terlizzi's estate in West Virginia, but the action was dismissed because West Virginia's long-arm statute could not be used to obtain personal jurisdiction over the defendant." Robinson, 700 So.2d at 724 n. 2.
[3] This section provides:

General saving as to persons under disability.
If any person to whom the right accrues to bring any such personal action, suit or scire facias ... shall be, at the time the same accrues, an infant or insane, the same may be brought within the like number of years after his becoming of full age or sane that is allowed to a person having no such impediment to bring the same after the right accrues... except that it shall in no case be brought after twenty years from the time when the right accrues.
W. Va.Code § 55-2-15 (1995).
[4] Section 95.11, Florida Statutes (1993), provides in part:

. . . .
(4) WITHIN TWO YEARS.
. . . .
(b) An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued.
[5] The borrowing statute, section 95.10, Florida Statutes (1997), provides: "When the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state."
[6] In answering this conflict of law question, it is immaterial for purposes of our analysis that section 95.11(4)(b), Florida Statutes (1993), is characterized as a statute of repose versus a statute of limitation. We have distinguished the statutes thusly: statutes of repose bar actions by setting a time limit within which an action must be filed as measured from a specified act, after which time the cause of action is extinguished; statutes of limitation bar actions by setting a time limit within which an action must be filed as measured from the accrual of the cause of action, after which time obtaining relief is barred. See Kush v. Lloyd, 616 So.2d 415, 418 (Fla.1992). This distinction may be critical in determining whether a claim is barred where, for example, negligence is not discovered until years after the incident causing injury; however, this distinction has no bearing on the choice of law question since whether a jurisdiction applies a statute of repose or limitation in a given case is simply the "law" of that jurisdiction which is employed after application of the "significant relationship" test determines which jurisdiction's law is to be applied. This conclusion is consistent with this Court's predicate use of the "significant relationship" test when determining which jurisdiction's substantive law, borrowing statute, and statute of limitation should apply. See Bates, 506 So.2d 1114; Bishop, 389 So.2d 1001. We see no reason to treat a statute of repose any differently from the above mentioned laws.
[7] See W. Va.Code § 55-2-15 (1995).
[8] Section 142 of the Restatement (Second) of Conflicts of Laws (Supp.1989), provides as follows:

Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6. In general, unless the exceptional circumstances of the case make such a result unreasonable:
(1) The forum will apply its own statute of limitations barring the claim.
(2) The forum will apply its own statute of limitations permitting the claim unless:
(a) maintenance of the claim would serve no substantial interest of the forum; and
(b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.
[9] The commentary accompanying section 142 explains that a forum "will entertain a claim that is barred by its own statute of limitations but not by that of some other state ... when the forum believes that under the special circumstances of the case dismissal of the claim would be unjust." Restatement (Second) of Conflict of Laws § 142 cmt. f (Supp.1989).
[10] Sections 142 and 143 explained the effects of the statute of limitations of the forum state on the ability to maintain an action and prohibited a state from entertaining any action where a foreign statute of limitations barred the right, respectively. Restatement (Second) of Conflict of Laws §§ 142, 143 (1971).
[11] West Virginia's long-arm statute, section 56-3-33, West Virginia Code (1984), is not retroactive and is not available to a plaintiff in a cause of action arising from acts occurring prior to its effective date of June 7, 1978. The alleged medical malpractice occurred during Carrie Hargis Robinson's birth on May 12, 1977.
[12] See § 95.10, Fla. Stat. (1997).